## S10A1207. DRAKE v. THE STATE.

(702 SE2d 161)

HUNSTEIN, Chief Justice.

Houston Wesley Drake was convicted of felony murder, first degree cruelty to children and giving a false name to law enforcement officers in regard to the death of his eleven-month-old son, Devon McCoy. He appeals from the denial of his motion for new trial[1] contending in his sole enumeration of error that his convictions should be reversed because the jury returned a mutually exclusive verdict. For the reasons that follow, we affirm.

1. The evidence established that appellant had sole custody of his infant son, Devon. The two were living with Claire Garceau, with whom appellant had become romantically involved in September 1999. Garceau testified that she saw appellant on nearly a daily basis use his hand to cover Devon's nose and mouth to stop the baby from crying, sometimes blocking the air flow for such a long time that the baby was rendered unconscious. In regard to the events of Monday, January 18, 2000, Garceau testified that appellant took Devon into the bathroom that evening so that she could talk privately on the phone. Although the door to the bathroom was closed, Garceau's attention was caught by a "thump or a thud or some kind of bump" from the bathroom. When appellant came out, he left Devon on his stomach on the floor of the bathroom and responded to Garceau's question about the noise by replying, "What, did you think I was in there beating [Devon] or something?" Garceau noticed that, when appellant subsequently retrieved Devon and attempted to play with

---

[1] The victim's fatal injuries were inflicted on January 18, 2000. Drake was indicted April 12, 2000 in Gwinnett County and charged with malice murder (Count 1); felony murder (predicated on first degree cruelty to children committed on January 18, 2000) (Count 2); first degree cruelty to children committed on January 18, 2000 (Count 3); first degree cruelty to children committed between September 1, 1999 and January 18, 2000 (Count 4); and giving a false name to law enforcement officers, committed on January 20, 2000 (Count 5). The jury in its verdict filed February 18, 2003 found Drake guilty of involuntary manslaughter in the commission of a misdemeanor as a lesser included offense of malice murder and guilty of the remaining charges. He was sentenced by order filed February 20, 2003 to life imprisonment for felony murder, twenty years to serve concurrent on the Count 4 cruelty to children conviction and twelve months to serve concurrent on the Count 5 conviction; the remaining convictions were merged or vacated. Drake's timely filed motion for new trial, as amended, and his motion to correct sentencing were denied September 8, 2009. A notice of appeal was filed September 14, 2009. The appeal was docketed for the April 2010 term in this Court and was submitted for decision on the briefs.

him, the baby failed to interact in his usual manner despite appellant's efforts to elicit a response and that, unlike earlier in the day, Devon did not sit up on the bed, stand up or eat anything. The next morning when Devon's condition worsened, Garceau testified that appellant initially refused to take the baby to a doctor saying he was afraid that he would be arrested "for child abuse or for beating him." Appellant waited until late that evening, when Devon became completely unresponsive with noticeably irregular and shallow breathing, to seek medical help for Devon. Due to the nature of the baby's injuries, hospital personnel contacted the police; when interviewed, appellant gave the police a false name for both himself and his son. In his statements to police, appellant claimed that he had played with Devon on the bed by bouncing the mattress up and down for a five to ten minute period until Devon quit laughing, at which time appellant realized Devon was not coherent.

The pediatric emergency-medicine physician testified that, when he questioned appellant about Devon's injuries, appellant reported only that the victim had fallen three or four days earlier while pulling himself up in the bathtub, striking his chin on the lip of the tub; in the physician's professional opinion, Devon's severe injuries were not consistent with such a fall. The pediatric neurosurgeon who treated Devon testified that appellant denied any history at all of trauma other than roughhousing and the normal falls that a child would make. According to the neurosurgeon, Devon's injuries were caused by his head being shaken back and forth and then hit against a wall or other solid object; that the injuries he observed in Devon did not "leave any doubt but [that] this is shaken-baby/impact syndrome"; and that, based on the type of injuries Devon sustained, the "symptom onset would have been immediate" such that the baby would not have appeared normal and healthy after the injuries were inflicted. The medical examiner testified that Devon died from craniocerebral trauma, i.e., blunt impacts to the head that resulted in trauma to the scalp, skull and brain, and that these injuries could not be explained either by a fall in a bathtub while Devon was pulling himself up or by being bounced on a bed.

Appellant testified at trial that, three or four days prior to January 18, 2000, Devon hurt himself while pulling to a standing position in a bathtub; on January 18, 2000, appellant bounced Devon on the bed as the baby giggled and cooed normally; appellant went into the bathroom with Devon while Garceau was on the phone but Devon sustained no injury during that time and they left together when the phone call ended; that Devon was still very functional that night before bed and the following morning; and that it was not until later in the afternoon that Devon displayed any serious signs that something was wrong.

The evidence adduced was sufficient to enable a rational trier of fact to find Drake guilty beyond a reasonable doubt of felony murder, cruelty to children in the first degree and giving a false name to law enforcement. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court charged the jury on the misdemeanors of reckless conduct, simple battery and battery and instructed the jury that it could find appellant guilty of involuntary manslaughter in the commission of a misdemeanor as a lesser included offense of both malice murder and felony murder. The jury found appellant guilty of misdemeanor-involuntary manslaughter as to the malice murder count, using a verdict form that did not require the jury to identify which of the three charged misdemeanors was the basis for the involuntary manslaughter verdict. However, the jury also found appellant guilty of felony murder based on the underlying felony of cruelty to children, rejecting the option of finding him guilty of misdemeanor-involuntary manslaughter as to that charge.

Appellant contends that the involuntary manslaughter verdict was mutually exclusive of the guilty verdict for felony murder/ cruelty to children. "Verdicts are mutually exclusive 'where a guilty verdict on one count logically excludes a finding of guilt on the other. (Cits.)' [Cits.]" *Jackson v. State*, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003). While guilty verdicts on involuntary manslaughter and felony murder are not mutually exclusive as a matter of law, *Smith v. State*, 267 Ga. 372 (6) (477 SE2d 827) (1996), a mutually exclusive verdict may be rendered in a particular case where the offenses underlying the felony murder and involuntary manslaughter convictions "reflect that the jury, in order to find the defendant guilty [of both offenses], necessarily reached two positive findings of fact that cannot logically mutually exist." (Citations and punctuation omitted.) *Flores v. State*, 277 Ga. 780, 783 (3) (596 SE2d 114) (2004). A mutually exclusive verdict results when the jury finds that the defendant acted with both criminal intent and criminal negligence at the same instant regarding the same victim involving the same act. See id. (finding mutually exclusive verdict where appellant was found guilty of both felony murder based on aggravated assault and involuntary manslaughter based on reckless conduct as to a single homicide victim).

Appellant acknowledges that, if the predicate offense found by the jury for involuntary manslaughter was simple battery or battery, which are misdemeanor offenses committed with criminal intent, see OCGA §§ 16-5-23 (a), 16-5-23.1 (a), then the intent element of the battery offenses would be logically consistent with the mens rea required for the felony offense of cruelty to children on which appellant's felony murder conviction is predicated. See OCGA §

16-5-70 (b); *Carter v. State*, 269 Ga. 420 (5) (499 SE2d 63) (1998) (involuntary manslaughter based on simple battery not inconsistent with felony murder based on cruelty to children). Appellant, however, points to the fact that the jury here was also charged that it could find involuntary manslaughter based on the underlying misdemeanor of reckless conduct, a misdemeanor offense committed by criminal negligence, OCGA § 16-5-60 (b); see also *Banta v. State*, 282 Ga. 392 (5) (651 SE2d 21) (2007), which would be logically inconsistent with the criminal intent required of the felony murder/cruelty to children conviction. In the absence of any express notation by the jury identifying the misdemeanor on which it based its involuntary manslaughter verdict, appellant argues that reversal is required because a reasonable possibility exists that the jury returned a mutually exclusive verdict by relying on reckless conduct rather than battery or simple battery for its involuntary manslaughter verdict.

We disagree. While this case presented the *potential* for a mutually inconsistent verdict, the verdict as returned by the jury eliminated any possibility that the involuntary manslaughter verdict was predicated on reckless conduct. Despite being given the option of finding involuntary manslaughter as a lesser included crime for both the malice murder charge and the felony murder charge, the jury nevertheless chose to find appellant guilty of involuntary manslaughter solely as to the malice murder charge. The jury did so after hearing the trial court's instructions, which clearly differentiated the criminal negligence that was required to prove reckless conduct from the criminal intent required to prove battery and simple battery *as well as* the cruelty to children felony on which the felony murder count was predicated.[2] Had the jury here determined that an act of reckless conduct was the basis for its involuntary manslaughter verdict as the lesser included offense of malice murder, under the charge it received in this case it would have necessarily returned the same verdict of involuntary manslaughter as the lesser included offense of the felony murder count.

Qualified jurors under oath are presumed to follow the instructions of the trial court. *Lewis v. State*, 287 Ga. 210, 213 (4) (695 SE2d 224) (2010). We will not presume, as appellant would have us do, that the jury ignored the trial court's instructions and rendered a logically inconsistent verdict by finding, as to the exact same event involving the same victim at the same instant, that appellant acted with criminal negligence so as to find him guilty of involuntary

---

[2] The trial court also thoroughly charged the jury on the definitions of criminal intent and criminal negligence.

manslaughter but with criminal intent so as to find him guilty of felony murder. Compare *Flores v. State*, supra, 277 Ga. at 782 (3) (verdict returned by jury clearly demonstrated its logical inconsistency with findings of guilt as to both felony murder based on aggravated assault and involuntary manslaughter based on reckless conduct); *Jackson v. State*, supra, 276 Ga. at 410 (2) (same). Rather, looking to OCGA § 17-9-2 ("[v]erdicts are to have a reasonable intendment, are to receive a reasonable construction, and are not to be avoided unless from necessity"), we conclude that the only reasonable construction of the verdict returned by the jury here is that, consistent with its guilty verdict on the felony murder charge based on cruelty to children, an offense requiring criminal intent, it likewise predicated its involuntary manslaughter verdict on a misdemeanor involving criminal intent, i.e., battery or simple battery. The trial court did not err by refusing to find that the jury returned a mutually exclusive verdict.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 1, 2010.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, Richard A. Vandever, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Amy E. Hawkins Morelli, Assistant Attorney General*, for appellee.