In the Supreme Court of Georgia

Decided: November 17, 2014

S14A0889.  THE STATE v. OWENS.

BENHAM, Justice.

Appellee Maria Owens was tried and convicted in regard to the death of an eleven-month-old infant Jaylen Kelly.[1]  The State contends the trial court erred when it failed to sentence appellee on the convictions for felony murder, but rather sentenced her on the conviction for the lesser included offense of involuntary manslaughter (OCGA § 16-5-3 (a)).  Because the jury returned mutually exclusive verdicts in this case, the judgment of conviction for involuntary manslaughter is reversed.

[1]The crimes occurred on June 1, 2011.  On October 11, 2011, a Fulton County grand jury indicted appellee on charges of malice murder, felony murder (aggravated assault), felony murder (cruelty to a child in the first degree), aggravated assault, and cruelty to a child in the first degree. Appellee was tried before a jury on September 30, 2013, and October 1, 2013.  The jury acquitted appellee of malice murder, found her guilty on all other charges in the indictment, and found her guilty of the lesser included offense of involuntary manslaughter (OCGA § 16-5-3 (a)).  On October 11, 2013, the trial court sentenced appellee to serve ten years on the conviction for involuntary manslaughter.  The trial court "merged" all remaining charges into the count for malice murder.  The State filed a timely notice of appeal on October 15, 2013, and the case was docketed in the Court of Appeals.  On February 24, 2014, the Court of Appeals transferred the case to this Court and the matter was docketed to the April 2014 term for a decision to be made on the briefs.

1. Viewed in a light most favorable to the jury's verdicts of guilt, the evidence at trial showed the victim's parents Danielle and Andre Kelly left the victim and his three-year-old sister in appellee's care sometime between 7 A.M. and 8 A.M. on the morning of June 1, 2011. The parents testified the victim was in good health and acting normally, including walking[2] and playing with his siblings, when they left him with appellee that morning. After she arrived at work around 8:30 A.M., Mrs. Kelly said she sent appellee a text message confirming she would be placing the victim and his sister with a new daycare provider.[3] Around midmorning, Mrs. Kelly had a conversation with appellee in which appellee advised Mrs. Kelly that the victim was having trouble breathing. Appellee called 911 and informed emergency personnel that the victim was having trouble breathing. A fireman who responded to the call and was a certified paramedic testified when he asked appellee what was wrong, appellee informed him the child had bronchitis. The fireman said appellee's explanation

[2]The victim had been walking for a month prior to his death.

[3]According to Mrs. Kelly, she had previously advised appellee that she was looking for a new daycare and that her plans were contingent upon approval by the new facility. The morning of June 1, Mrs. Kelly had been informed her application was approved.

did not match the symptoms the child was exhibiting.[4]  The emergency personnel who responded to the scene made a decision to transport the victim to a hospital in Fayetteville.  Eventually, the victim was life flighted to a children's hospital in Atlanta.  The doctor who treated the victim at the children's hospital testified that, when the victim arrived, he was going into cardiac arrest.  Medical personnel were concerned about internal bleeding, but could not stabilize the victim to a point where surgery could be performed safely.  Upon being informed that continued resuscitation would result in the victim's being unable to breathe without a ventilator, the parents elected to cease extraordinary measures and the victim died.

A social worker advised the police the victim had died under suspicious circumstances and police arrested appellee the day after the child's death. At trial, the State played for the jury appellee's video-recorded interrogation with police.  Appellee told police the victim was congested and, while changing the victim's diaper in the bathroom, she lifted him by one arm and patted and/or hit

_____

[4]Emergency personnel testified that the child was awake and breathing on his own, but was cold to the touch, indicating blood was not circulating to his extremities, was very lethargic, and was not exhibiting normal signs of distress such as crying or pulling away when touched.

him on his side[5] in order to make him cough.  She said the victim screamed when she did this.  Prior to taking the victim to the bathroom to be changed, appellee told police the victim had eaten some applesauce, had smiled at her, and had climbed off the couch to walk over to where some toys were sitting.  Appellee said while waiting for emergency personnel to arrive, she asked her husband whether she had hit the victim too hard.

The Fulton County medical examiner testified that the cause of death was blunt force trauma to the torso and that the manner of death was homicide.  She stated the autopsy revealed the victim suffered a fresh fracture to his lower back that could only have been inflicted by a "very hard blow."  The trauma to the victim's torso caused a great deal of internal bleeding in the victim's abdomen such that he would have had difficulty breathing.  The county medical examiner said the victim would have been unable to walk with the kind of fracture he suffered to his back.  Appellee's medical expert agreed that the cause of death was blunt force trauma to the abdomen, that the manner of death was homicide, and that the trauma the victim suffered was non-accidental in nature; however,

---

[5]Appellee used both  words "patted" and "hit" during her interrogation.

he opined that the fracture to the victim's back had occurred days before the victim's death.[6]

The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellee guilty beyond a reasonable doubt of the crimes for which the jury returned verdicts of guilt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. On appeal, both parties raise the issue of the State's right to appeal, which question affects this Court's jurisdiction. The State argues it is entitled to appeal pursuant to OCGA § 5-7-1 (a) (2)[7] and OCGA § 5-7-1 (a) (6).[8] Appellee contends the State has no right to appeal and that this Court is without jurisdiction. As discussed more fully in Division 3 of this opinion, infra, the judgment of conviction entered in this case was void because it was based on the return of mutually exclusive verdicts. Allaben v. State, 294 Ga. 315 (2) (a) (2)

---

[6]Yet appellee's medical expert admitted he could not explain how the victim was able to walk, or otherwise not exhibit feeling pain, with the type of fracture he suffered to his back.

[7]OCGA § 5-7-1 (a) (2) provides that in a criminal case, the State is entitled to appeal from "an order, decision, or judgment arresting judgment of conviction or adjudication of delinquency upon legal grounds...."

[8]OCGA § 5-7-1 (a) (6) provides that in a criminal case, the State is entitled to appeal from "an order, decision, or judgment of a court where the court does not have jurisdiction or the order is otherwise void under the Constitution or laws of this state...."

(751 SE2d 802) (2013).  See also Jackson v. State, 276 Ga. 408, 410 n.2 (577 SE2d 570) (2003); Louis v. State, 290 Ga. App. 106, 109 n.13 (2) (658 SE2d 897) (2008).  As such, the State's appeal is authorized by OCGA § 5-7-1 (a) (6)[9] and this Court has jurisdiction to review the case on the merits.

3.  The State contends the guilty verdicts returned on the two felony murder counts and the lesser included count of felony involuntary manslaughter were not mutually exclusive and the trial court erred when it sentenced appellee on felony involuntary manslaughter rather than sentencing her on the counts of felony murder.  Appellee counters the jury returned mutually exclusive verdicts and argues the trial court properly sentenced her on the lesser included offense of felony involuntary manslaughter.  We agree with appellee that the jury returned mutually exclusive verdicts; however, the trial court erred when it remedied the matter by sentencing appellee on the lesser included offense of felony involuntary manslaughter.

The record shows the original indictment did not include any counts of voluntary or involuntary manslaughter.  (See n.1, supra.)  During the charge

_____

[9]Accordingly, we need not consider whether OCGA § 5-7-1 (a) (2) authorizes the State's appeal.

conference at trial, appellee requested and the trial court agreed to give, without an objection from the State, jury charges on the lesser included offenses of voluntary manslaughter, felony involuntary manslaughter (OCGA § 16-5-3 (a)),[10] and misdemeanor involuntary manslaughter (OCGA § 16-5-3 (b)).[11] The trial court's charges on felony involuntary manslaughter, simple battery, and reckless conduct were as follows:

> This is involuntary [manslaughter]. Subchapter A. This is a felony. A person commits involuntary manslaughter when that person causes the death of another human being without any intention to do so by the commission of simple battery or reckless conduct.
>
> ...A person commits the offense of simple battery when she intentionally causes physical harm to another.
>
> A person commits the offense of reckless conduct when such person causes bodily harm to or endangers the bodily safety of another

---

[10]OCGA § 16-5-3 (a) provides:
A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. A person who commits the offense of involuntary manslaughter in the commission of an unlawful act, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years.

[11]OCGA § 16-5-3 (b) provides:
A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm. A person who commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner, upon conviction thereof, shall be punished as for a misdemeanor.

person by consciously disregarding a substantial and justifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

In addition, the trial court gave the following charge on aggravated assault:

A person commits the offense of aggravated assault when the person assaults another person with an object, device or instrument which when used offensively against another person is likely to or actually does result in serious bodily injury.

To constitute such an assault, actual injury to the victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim.

This language in the charge on aggravated assault tracked OCGA §§ 16-5-21(b) (2)[12] and 16-5-20 (a) (1).[13]

The trial court also drafted the verdict form and gave the parties an opportunity to review it, but no objections or changes were made. The verdict form listed eight counts, the five counts listed in the indictment and the three

---

[12]OCGA § 16-5-21 (b) (2) provides in pertinent part: "A person commits the offense of aggravated assault when he or she assaults ...[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury...."

[13]OCGA § 16-5-20 (a) (1) provides in pertinent part: "A person commits the offense of simple assault when he or she ... [a]ttempts to commit a violent injury to the person of another...."

8

additional counts requested by appellee on the lesser included offenses, and left a space next to each count for the jury to find appellee either guilty or not guilty. The verdict form made no distinction as to whether the felony involuntary manslaughter count was predicated on the underlying offense of simple battery or reckless conduct. After deliberations, the verdict form revealed the jury found appellee not guilty of malice murder, guilty of both counts of felony murder, guilty of aggravated assault, guilty of first degree cruelty to children, not guilty of voluntary manslaughter, guilty of felony involuntary manslaughter, and not guilty of misdemeanor involuntary manslaughter. After the verdict was returned, the trial court postponed sentencing and the State filed a motion requesting the trial court impose a sentence for felony murder. After conducting a sentencing hearing, the trial court sentenced appellee to serve ten years for felony involuntary manslaughter (OCGA § 16-5-3 (a)) and "merged" the counts for felony murder, aggravated assault, and child cruelty into the malice murder count.

a. "Verdicts are mutually exclusive 'where a guilty verdict on one count logically excludes a finding of guilt on the other. [Cits.]'" Jackson v. State, supra, 276 Ga. at 410 (citing United States v. Powell, 469 U.S. 57, 69 fn. 8 (105

9

SCt 471, 83 LE2d 461) (1984)). Verdicts on felony murder and involuntary manslaughter are not mutually exclusive as a matter of law. Id. Such verdicts are mutually exclusive, however, when the felony murder verdict requires a finding of criminal intent to commit the underlying felony and the involuntary manslaughter verdict requires a finding of criminal negligence (i.e., reckless conduct). Id. at 411-412; Flores v. State, 277 Ga. 780 (3) (596 SE2d 114) (2004) (verdicts of guilty for felony murder and involuntary manslaughter predicated on reckless conduct were mutually exclusive). See also Walker v. State, 293 Ga. 709 (2) (a)-(e) (749 SE2d 663) (2013) (convictions for felony murder predicated on aggravated assault under OCGA § 16-5-20 (a) (1) and homicide by vehicle based on reckless driving were mutually exclusive).

Here, appellee was charged on counts of felony murder which required a showing that the underlying felony was committed with intent.[14] When the jury

---

[14]In the indictment it was alleged appellee committed both charges of felony murder by "inflicting blunt force against [the victim's] head and torso." As to the count of felony murder predicated on aggravated assault, the jury received instructions pursuant to OCGA § 16-5-20 (a) (1), which this Court has held requires a showing of criminal intent. Jackson v. State, supra, 276 Ga. at 411 ("'[A]n aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) cannot be committed by criminal negligence.' [Cit.]"). In contrast, if the underlying aggravated assault is based on OCGA § 16-5-20 (a) (2), a showing of intent is not required. Id. at 412, n.5. Similarly, the count of felony murder predicated on cruelty to a child in the first degree also required a showing of criminal intent as an element of the offense. See Sullivan v. Kemp, 293 Ga. 770, 776 n.4 (749 SE2d 721) (2013) (cruelty to a child in the first degree involves crime of intent).

10

was instructed on felony involuntary manslaughter, it was given the option to choose the underlying predicate of simple battery, which requires criminal intent, or reckless conduct, which requires criminal negligence. See Allaben v. State, supra, 294 Ga. at 322. None of these instructions were in error. However, after the verdict form was returned and the jury was dismissed, it was impossible to determine whether the jury found appellee guilty of felony involuntary murder based on simple battery or based on reckless conduct. This lack of specificity created a reasonable possibility that the jury found appellee guilty of felony involuntary manslaughter based on reckless conduct.

The State relies on Jackson v. State, supra, and Drake v. State, 288 Ga. 131 (702 SE2d 161) (2010), to argue that any ambiguity can be reconciled so that the verdicts are not mutually exclusive. We disagree. In Jackson v. State, we held "that convictions for both felony murder and involuntary manslaughter do not exclude each other in those situations where the offenses underlying the convictions can be reconciled by looking to either the legal requirements for each underlying offense or to the unique facts adduced at trial." 276 Ga. at 411. In Drake v. State, we were able to reconcile what, on the surface, appeared to be mutually exclusive verdicts. In that case, the jury was instructed on reckless

11

conduct, simple battery, and battery, and found the defendant guilty of misdemeanor involuntary manslaughter as a lesser included offense of malice murder and guilty of felony murder predicated on child cruelty in the first degree. 288 Ga. at 133. Like the verdict form in this case, there was no notation as to whether the involuntary manslaughter count was predicated on simple battery or on reckless conduct. Id. at 134. Unlike the jury in this case, however, the Drake jury was given the option of finding the defendant guilty of misdemeanor involuntary manslaughter as a lesser included offense of the felony murder count, but it declined to do so. Id. at 134. On those facts, this Court held that because the jury had been properly charged as to the differentiations between criminal intent and criminal negligence, and because the jury had found defendant guilty of involuntary manslaughter solely as to the malice murder charge, it was not possible for the jury to have predicated its involuntary manslaughter verdict based on criminal negligence. Id. ("Had the jury here determined that an act of reckless conduct was the basis for its involuntary manslaughter verdict as the lesser included offense of malice murder, under the charge it received in this case it would have necessarily returned the same verdict of involuntary manslaughter as the lesser included

12

offense of the felony murder count.") We thus concluded the <u>Drake</u> jury had predicated its involuntary manslaughter verdict on the intentional crime of battery such that it was consistent with and not mutually exclusive of felony murder predicated on first degree cruelty to children. Id. at 135.

This case is distinguishable from <u>Drake</u> because the jury had no option to return a guilty verdict on involuntary manslaughter solely as to the count of malice murder or solely as to the count of felony murder. Rather, the counts on all of the lesser included offenses were listed as independent options on which the jury could make a finding of guilty or not guilty. The trial court also did not give any instructions, and the parties asked for none, admonishing the jury that if it found appellee guilty of the counts of felony murder, then it could not also find appellee guilty of felony involuntary manslaughter predicated on reckless conduct.[15] Under the facts of this case, it is not possible to reconcile the verdicts in question pursuant to <u>Drake</u>. The verdicts returned in this case are mutually exclusive.

---

[15]In circumstances where a jury returns mutually exclusive verdicts, a trial court may send the jury back for more deliberation. See <u>Dumas v. State</u>, 266 Ga. 797 (2) (471 SE2d 508) (1996). Here, the jury was dismissed before the trial court and the parties realized there was a problem with the verdicts.

b.  A judgment entered on mutually exclusive verdicts is void. Allaben v. State, supra, 294 Ga. at 320.   The appellate courts of this state have held the remedy for a judgment entered on convictions based on mutually exclusive verdicts is to reverse the judgment, set aside the verdicts at issue, and remand for a new trial.  See id.;  Walker v. State, supra 293 Ga. at 716; Flores v. State, supra, 277 Ga. at 785; Jackson v. State, supra, 276 Ga. at 413; Thomas v. State, 261 Ga. 854 (1) (413 SE2d 196) (1992); Camsler v. State, 211 Ga. App. 826 (440 SE2d 681) (1994).  Setting aside the felony involuntary manslaughter verdict in favor of sentencing appellee on the verdicts of felony murder, as the State suggests, is an insufficient remedy because it requires speculation by the appellate courts and usurps the function of the jury and the sentencing court. See Dumas v. State, 266 Ga. 797 (2) (471 SE2d 508) (1996); Thomas v. State, supra, 261 Ga. at 855.  See also Milanovich v. United States, 365 U.S. 551, 555-556 (81 SCt 728, 5 LE2d 773) (1961).  Accordingly, the judgment of conviction is reversed, the verdicts on felony murder and felony involuntary manslaughter are set aside, and the case is remanded for new trial.

Judgment reversed and case remanded with direction.  All the Justices concur.

14

S14A0889.  THE STATE v. OWENS.

NAHMIAS, Justice, concurring.

I join the Court's opinion for the same reasons, but with the same doubts, expressed in my concurrence in Allaben v. State, 294 Ga. 315, 322-325  (751 SE2d 802) (2013) (Nahmias, J., concurring).  I add that while the Court's opinion concludes, just plausibly enough, that this case can be distinguished from Drake v. State, 288 Ga. 131 (702 SE2d 161) (2010), it is difficult to reconcile Drake with our cases since 2003 that have reversed convictions based on purportedly mutually exclusive verdicts – which is yet another reason to question whether those cases were correctly decided.  I am authorized to state that Justice Blackwell joins in this concurrence.