297 Ga. 376
FINAL COPY

S14G1539. THE STATE v. SPRINGER.

THOMPSON, Chief Justice.

We granted the State's petition for writ of certiorari to review the Court of Appeals' decision reversing appellee Roderick Springer's convictions for aggravated assault and involuntary manslaughter based on reckless conduct on the ground that these verdicts are mutually exclusive. See Springer v. State, 328 Ga. App. 654 (762 SE2d 433) (2014). After reviewing the record and pertinent case law, we hold that under the facts of this case, the jury's guilty verdicts are not mutually exclusive and reverse the judgment of the Court of Appeals. In doing so, we overrule our decision in Jackson v. State, 276 Ga. 408 (577 SE2d 570) (2003).

The State presented evidence at trial demonstrating that Springer and a co-defendant exchanged multiple gunshots in a public parking lot, several of which struck the victim, an innocent bystander, causing the victim's death. Springer was indicted on charges of felony murder, aggravated assault, and possession of a firearm during the commission of a crime. At Springer's request, in

addition to instructing the jury on the offenses set out in the indictment, the trial court also charged the jury on the lesser included offense of involuntary manslaughter predicated on the misdemeanors of reckless conduct and simple assault. See OCGA § 16-5-3 (a) (involuntary manslaughter unlawful act); OCGA § 16-5-20 (simple assault); OCGA § 16-5-60 (b) (reckless conduct). The jury ultimately found Springer guilty of involuntary manslaughter based on reckless conduct, aggravated assault, and possession of a firearm during the commission of a crime. He was sentenced to concurrent terms of 10 and 20 years imprisonment for involuntary manslaughter and aggravated assault, respectively, and a consecutive five-year term of imprisonment on the firearm count.

Springer appealed to the Court of Appeals, arguing, in part, that his involuntary manslaughter and aggravated assault convictions were prohibited under Jackson, supra, a case in which a majority of this Court held that convictions for felony murder predicated on aggravated assault and involuntary manslaughter based on reckless conduct are mutually exclusive and, therefore, must be reversed, "because they represent a positive but illogical finding by the jury that [the defendant] acted with both criminal intent and criminal

2

negligence." Jackson, supra, 276 Ga. at 411. Relying on Jackson, the Court of Appeals vacated Springer's involuntary manslaughter and aggravated assault convictions, finding the jury's verdicts are mutually exclusive because there was a reasonable probability that the jury concluded that Springer acted both with and without an intent to harm the victim when he discharged his gun in the parking lot. See Springer, supra, 328 Ga. App. at 657.

1. The State urges us to reconsider our holding in Jackson, arguing that verdicts of guilt for the greater offense of aggravated assault and the lesser included offense of reckless conduct are not mutually exclusive. It points out that under Georgia law, involuntary manslaughter and reckless conduct are both lesser included offenses of felony murder, and reckless conduct is also a lesser included offense of aggravated assault by attempting to injure. See Reinhardt v. State, 263 Ga. 113, 113-114 (2) (428 SE2d 333) (1993), overruled on other grounds, Vergara v. State, 283 Ga. 175, 177 (657 SE2d 863) (2008); Shaw v. State, 238 Ga. App. 757, 758-759 (519 SE2d 486) (1999). See also OCGA § 16-1-6 (defining included crime). It argues, therefore, that because the offense of reckless conduct is included in the charged crime of felony murder based on aggravated assault, it is illogical to conclude that a conviction for the lesser

3

offense and a conviction of the greater offense are mutually exclusive. Springer takes the position that Jackson was not wrongly decided but asks this Court to hold that a defendant has the discretion to accept mutually exclusive verdicts when it is in his or her interest to do so.

As a general rule, a guilty verdict cannot be challenged on the ground that the jury's verdict of guilt on one count of an indictment is inconsistent with an acquittal on another count. See United States v. Powell, 469 U. S. 57, 68-69 (105 SCt 471, 83 LE2d 461) (1984); Dumas v. State, 266 Ga. 797, 799 (471 SE2d 508) (1996). Such verdicts are deemed constitutionally tolerable because they may reflect an exercise of lenity by the jury that is not necessarily grounded in its view of the evidence. See Dunn v. United States, 284 U. S. 390, 393 (52 SCt 189, 76 LE 356) (1932), quoting Steckler v. United States, 7 F2d 59, 60 (2d Cir. 1925) ("The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity"); Dumas, supra, 266 Ga. at 799 (2) (abolition of inconsistent

4

verdict rule is consistent "with the principle that it is not generally within the trial court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts.").

In Powell, supra, 469 U. S. at 69, n. 8, the Supreme Court noted that nothing in that opinion was "intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other." This Court addressed the issue left undecided in Powell in Dumas, supra, 266 Ga. at 800. In that case, the jury initially found the defendant guilty of malice murder, vehicular homicide, and driving under the influence. The trial court informed the jury it had rendered inconsistent verdicts and sent jurors back for further deliberations. The jury later returned verdicts finding Dumas guilty of malice murder and driving under the influence. On appeal, Dumas argued that the trial court was obligated to accept the jury's first verdicts, and because the essential elements of malice murder and vehicular homicide could not be reconciled, the trial court was only authorized to convict him of the lesser offense of vehicular homicide. Id. at 798. We affirmed, agreeing both that verdicts are mutually

5

exclusive where it is "legally and logically impossible to convict [the accused] of both counts," and that the first verdicts could not be accepted because the guilty verdicts for malice murder, an offense requiring a showing of malice, and vehicular homicide, requiring a showing of the *absence* of malice aforethought and intent, were mutually exclusive. Id. at 800. We also held that where verdicts are mutually exclusive, reversal of both verdicts is required because it would be "insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and trial court."[1] Id. Thus, we determined in Dumas that at least under state law, two or more legally and logically irreconcilable guilty verdicts cannot stand.[2] See also

---

[1] This Court has recognized that verdicts are not mutually exclusive and reversal is not required "where the offenses underlying the convictions can be reconciled by looking to either the legal requirements for each underlying offense or to the unique facts adduced at trial." Jackson, 276 Ga. at 411. We, therefore, have upheld convictions where we could determine from the verdicts as to all charges that the jury did not base its involuntary manslaughter verdict on criminal negligence, see Drake v. State, 288 Ga. 131, 133-135 (702 SE2d 161) (2010), where the record showed the defendant's convictions were based on different acts, see Mills v. State, 280 Ga. 232, 234 (626 SE2d 495) (2006), and where we could determine from the record that the verdicts were based on crimes committed against two different victims, see Sanchez v. State, 285 Ga. 749, 751 (684 SE2d 251) (2009).

[2] Because of this holding, we reject Springer's suggestion that defendants should be allowed to accept mutually exclusive verdicts despite the inherent error. For the same reason, we reject the State's invitation to treat challenges to mutually exclusive verdicts merely as challenges to the sufficiency of the evidence.

Masoner v. Thurman, 996 F2d 1003, 1005 (9th Cir. 1993) (holding that Powell is not applicable where jury convicts defendant of multiple charges that are logically inconsistent); United States v. Gross, 961 F2d 1097, 1106 (3d Cir. 1992) (logically incompatible guilty verdicts cannot stand).

Seven years later, in Jackson, this Court was called upon to consider for the first time whether convictions for felony murder predicated upon aggravated assault and involuntary manslaughter predicated upon reckless conduct are mutually exclusive. Our inquiry required us to carefully scrutinize the offenses alleged in the indictment as underlying the charges and determine whether the jury, in finding the defendant guilty of both counts, "necessarily reached two positive findings of fact that cannot logically mutually exist." Jackson, supra, 276 Ga. at 410 (citation and punctuation omitted). In doing so, we recognized that felony murder requires a defendant to possess the criminal intent to commit the underlying felony and that where the felony murder charged is based on an assault, in that case aggravated to felony status by use of a deadly weapon, there are two ways to commit the assault: (1) by attempting to "commit a violent injury to the person of another," OCGA § 16-5-20 (a) (1), or (2) by committing "an act which places another in reasonable apprehension of immediately

7

receiving a violent injury." OCGA § 16-5-20 (a) (2). Citing Dunagan v. State, 269 Ga. 590 (502 SE2d 726) (1998), we further acknowledged that an aggravated assault with a deadly weapon based on an assault under OCGA § 16-5-20 (a) (1) cannot be committed by criminal negligence. Jackson, supra, 276 Ga. at 411. Reckless conduct, in contrast, is "'an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another.'" Id. (citation omitted). Given the different elements of these two offenses and our holding in Dunagan that a verdict of guilty as to aggravated assault based on OCGA § 16-5-20 (a) (1) requires a finding of intent, we held that the element of intent required to prove an assault under subsection (a) (1) "*precludes* the element of criminal negligence in reckless conduct" and the "two offenses cannot logically and legally co-exist." Jackson, supra, 276 Ga. at 412 (emphasis in original).

A careful review of Dunagan reveals the error in this analysis. Dunagan involved a challenge to a jury charge instructing that criminal negligence could substitute for criminal intent and support a guilty verdict for the offense of assault under OCGA § 16-5-20 (a) (1). Recognizing the two ways in which to commit an assault, we stated that for an alleged assault under subsection (a) (1),

8

"the attempted or completed injury to the victim is the intended consequence of the defendant's act," but if the threatened or completed injury results from the defendant's criminal negligence, a less culpable mental state, it constitutes the crime of reckless conduct under OCGA § 16-5-60. Dunagan, supra, 269 Ga. at 592. Accordingly, we held that "criminal intent and criminal negligence are not *interchangeable* in those instances where the mental culpability of the actor is the essential element that distinguishes two separate crimes, with separate penalties, for committing the same behavior." Id. (emphasis supplied). To have held otherwise would have authorized the jury to convict the defendant of aggravated assault predicated on an assault under OCGA § 16-5-20 (a) (1) based on the lesser mens rea of criminal negligence.

Dunagan, which simply holds that the lesser mental culpability of criminal negligence is not *interchangeable* with the greater intentional mental culpability to support a conviction under subsection (a) (1), was mistakenly cited in Jackson for the proposition that a finding of an intentional infliction of injury *precludes* the element of criminal negligence in reckless conduct and, therefore, convictions for both (a) (1) assault and reckless conduct based on the same act against the same victim are mutually exclusive. That was not our holding in

9

Dunagan.   Read properly, Dunagan stands only for the well-established proposition that proof of criminal negligence cannot substitute for criminal intent for those offenses where the only difference between the offenses is a greater or lesser mental culpability.  See Dunagan, supra, 269 Ga. at 592.

Viewing Dunagan in its proper context leads us to conclude that the position taken by Justice Carley in his Jackson dissent was correct and should have been followed.  Justice Carley argued that because reckless conduct is a lesser included crime in an aggravated assault, requiring only a "less culpable mental state" or "lesser kind of culpability," see OCGA § 16-1-6 (1) and (2), verdicts finding a defendant guilty of both offenses are not mutually exclusive. See Jackson, supra, 276 Ga. at 417 (Carley, J., dissenting). As he stated:

> There is nothing legally incompatible or legally inconsistent between the mens rea of a reckless disregard for life-threatening consequences and the mens rea of a specific intent to inflict harm. The latter is more blameworthy than the former, but it is not legally inconsistent with the former. To be sure, a specific intent to effect a desired consequence, on the one hand, and a conscious disregard of or callous indifference to the consequence, on the other hand, are mental states that are distinct and apparently contradictory in both a linguistic and psychological sense. They are not, however, incompatible or inconsistent in a legal sense.

Id., quoting Williams v. State, 641 A2d 990, 994 (Md. App. 1994).  See also

10

Buehl v. Vaughn, 166 F3d 163, 180 (II) (H) (3d Cir. 1999) (finding that defendant intentionally killed the victim is legally consistent with finding that he caused the victim's death through recklessness). In such cases, and especially where the lesser included crime does not require proof of the *absence* of a greater mens rea, the greater proof of a defendant's intent "does not negate or contradict the lesser proof but only subsumes it." Williams, supra, 641 A2d at 994. See also Buehl, supra, 166 F3d at 179 (recklessness element satisfied by proof of greater mens rea).

The absence of legal and logical incompatibility in the dual findings of intent to inflict injury and criminal negligence to support a conviction for reckless conduct is further evident upon examination of the mental requirements for each offense. The intent to cause harm required under subsection (a) (1) refers not only to the requisite mens rea of intent but also to a defendant's deliberate purpose to accomplish an injurious result. In contrast, the mens rea of criminal negligence is unconcerned with the consequences of a defendant's act but defines a mental state where an individual, conscious of the substantial and unjustifiable risk involved, nevertheless disregards that risk. See State v. Cole, 542 NW2d 43, 51-52 (Minn. 1996) (holding recklessness and intent are

11

not mutually exclusive because the reckless actor "consciously disregards a substantial and unjustifiable risk that the element of an offense exists or will result from his conduct" and the intentional actor "either has a purpose to do the thing specified or believes that the act performed will cause that result").

Upholding Jackson would require us to conclude that a jury's finding of a greater mens rea is legally and logically irreconcilable with a finding of guilt on a lesser included crime or, stated otherwise, that proof of a greater mens rea cannot be used as proof to establish a lesser mens rea. This proposition, like mutually exclusive verdicts, is neither logically nor legally sustainable. Even assuming that a jury finds a defendant guilty of an assault under OCGA § 16-5-20 (a) (1), proof of commission of the lesser included offense of reckless conduct may be established by proof of the greater offense of aggravated assault predicated on subsection (a) (1), the essential distinction between these crimes being the level of mental culpability. Such distinction does not mean that findings of guilt as to both offenses are irreconcilable or that if the State proves the greater mens rea, a jury would not be authorized to convict of the lesser included crime based on the finding of the greater. One cannot and should not be allowed to defend against a lesser included charge by proving that he is more

12

culpable. See Williams, supra, 641 A2d at 993 ("It is not a defense to prove that one is more culpable than charged."). Accordingly, we conclude that multiple guilty verdicts for the same conduct that are based on varying levels of mens rea are not mutually exclusive.[3]

2. We acknowledge that such a holding requires a departure from our ruling in Jackson. Stare decisis, however, is not an inexorable command but requires us, when considering whether to reexamine a prior erroneous holding, to "balance the importance of having the question *decided* against the

---

[3] In comparison to the verdicts in this case involving different levels of mental culpability and lesser included offenses are cases where a jury returns verdicts convicting a defendant of two or more crimes and the existence of an element of one of the crimes negates the existence of a necessary element of another crime. See, e.g., Thomas v. State, 261 Ga. 854, 855 (1) (413 SE2d 196) (1992) (guilty verdicts on charges of armed robbery and theft by receiving mutually exclusive because essential element of theft by receiving is that the goods are stolen by someone other than the accused). See also Thomas v. United States, 314 F2d 936, 939 (5th Cir. 1963) (verdicts mutually exclusive where jury convicted defendant of smuggling marijuana into the United States and obtaining same marijuana within the United States); United States v. Daigle, 149 FSupp. 409, 414 (D.C. Dist. Ct. 1957) (verdicts mutually exclusive where guilty verdict on one count negatives a fact essential to a finding of guilt on second count); Allison v. Mayo, 29 So2d 750, 752 (Fla. 1947) (where jury convicted defendant of breaking and entering and also of breaking without entering, guilty verdicts are repugnant and cannot be sustained); Cross v. State, 374 A2d 620, 623 (Md. Ct. Spec. App. 1977) (where defendant found guilty of grand larceny and of receiving the same stolen goods, verdicts could not be sustained); Bell v. State, 150 A2d 908, 912 (Md. 1959) (verdict of guilt on two inconsistent counts, larceny and receiving stolen goods, defective because defendant cannot be both thief and receiver as to same goods); State v. Speckman, 391 SE2d 165, 166-167 (N.C. 1990) (verdicts of guilt for both embezzlement, which requires that a defendant initially obtain property lawfully, and false pretenses, which requires that the property be initially obtained unlawfully, are mutually exclusive).

13

importance of having it *decided right*." State v. Jackson, 287 Ga. 646, 658 (697 SE2d 757) (2010) (emphasis in original). "In doing so, we consider factors such as the age of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning." Id.

Consideration of these factors weighs heavily in favor of overruling Jackson. Jackson was decided just over a decade ago, and its holding provided no substantive rights or other substantial reliance issues. See State v. Jackson, supra, 287 Ga. at 658 (overruling precedent that affected no property or contract rights and established no substantive rights); Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, 294 Ga. 593, 601 (2) (755 SE2d 184) (2014) (overruling precedent less than 20 years old); State v. Hudson, 293 Ga. 656, 656-657, 661-662 (748 SE2d 910) (2013) (overruling 38-year-old precedent). As discussed above, Jackson's reasoning and its reliance on Dunagan were unsound and misplaced and, as pointed out by Justice Nahmias in his concurrence in Allaben v. State, 294 Ga. 315, 324 (751 SE2d 802) (2013) (Nahmias, J., concurring), its holding creates legal incongruities leading to inconsistent and unwanted consequences. We, therefore, overrule Jackson and

14

its progeny[4] and hold that where the evidence authorizes a finding that a defendant's reckless conduct is an included crime in an aggravated assault, verdicts finding him guilty of both of those offenses are not mutually exclusive.

3. In the present case, the jury found Springer not guilty of felony murder but returned guilty verdicts on charges of aggravated assault and involuntary manslaughter predicated on the offense of reckless conduct. The trial court charged the jury as to both the (a) (1) and (a) (2) definitions of assault, authorizing the jury to return a verdict based on either definition, and the jury's verdict as to aggravated assault did not specify on which subsection it was based, leaving the possibility that the jury determined Springer both committed the assault with the intent to harm the victim and, at the same time, consciously disregarded a substantial and unjustifiable risk that his act of shooting a gun in a public parking lot would cause harm or endanger the safety of another. We conclude, based on the discussion above, that these are not findings that are logically and legally exclusive of the other. Accordingly, the decision of the

_____

[4] These cases include Allaben v. State, supra, 294 Ga. 315 (1); Walker v. State, 293 Ga. 709 (2) (749 SE2d 663) (2013); Dryden v. State, 285 Ga. 281, 282-283 (676 SE2d 175) (2009); Flores v. State, 277 Ga. 780 (2) (596 SE2d 114) (2004); Holcomb v. State, 310 Ga. App. 853 (2) (714 SE2d 407) (2011); and Reddick v. State, 264 Ga. App. 487 (4) (591 SE2d 392) (2003).

15

Court of Appeals is reversed.

Judgment reversed. All the Justices concur, except Benham and Hunstein, JJ., who dissent.

BENHAM, dissenting.

> Stability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument. . . . The doctrine of stare decisis seems to be less viable year by year. The haste with which [our precedent] has been . . . disapproved damages the reliability and credibility of this [C]ourt's decisions and adds to instability and uncertainty in the law.[5]

I write because I respectfully disagree with the majority's overruling

Jackson v. State, 276 Ga. 408 (577 SE2d 570) (2003), and its progeny.[6] With

---

[5] (Citation and punctuation omitted.) Grissom v. Gleason, 262 Ga. 374, 378 (418 SE2d 27) (1992) (Benham, J., concurring specially).

[6] In Jackson v. State, we held:
> [A] verdict of guilty as to aggravated assault based on OCGA § 16-5-20 (a) (1) requires a finding of an intentional infliction of injury, which *precludes* the element of criminal negligence in reckless conduct. [Cit.] [We] recognize that the requisite mental states for these two offenses cannot logically and legally co-exist.

the instant opinion, the majority will undo over a decade's worth of precedent, including a decision this Court made just last year. See Owens v. State, 296 Ga. 205 (766 SE2d 66) (2014). The majority has failed to explain what has changed so dramatically in the past twelve months that we must do away with over a decade's worth of precedent. In fact, today's decision is based on a re-reading of a case that we decided five years *before* Jackson v. State. See Dunagan v. State, 269 Ga. 590 (502 SE2d 726) (1998). Specifically, the majority opines: "Read properly, Dunagan stands only for the well-established proposition that proof of criminal negligence cannot substitute for criminal intent for those offenses where the only difference between the offenses is a greater or lesser mental culpability."[7]

---

"Mutual exclusion means that a finding of guilt on the essential elements of one count by definition excludes a finding of guilt based on an essential element of another count." [Cit.] A finding of guilt on the essential element of criminal intent for aggravated assault based on OCGA § 16-5-20 (a) (1) thus excludes a finding of guilt based on the essential element of criminal negligence for reckless conduct.

(Emphasis in original.) Id. at 412. This led us to determine that the defendant in Jackson v. State could not simultaneously be convicted of felony murder predicated on an OCGA § 16-5-20 (a) (1) aggravated assault and involuntary manslaughter predicated on reckless conduct. Id. We also concluded that, because the evidence supported a conviction on aggravated assault pursuant to OCGA §§ 16-5-20 (a) (1) and (a) (2), the defendant was entitled to a new trial in order to avoid usurping the province of the jury. Id. at 413.

[7] Maj. op. at 380. The majority anchors its analysis on the following phrase from the Dunagan opinion: ". . . criminal intent and criminal negligence are not interchangeable in those instances where the mental culpability of the actor is the essential element that distinguishes two separate crimes, with separate penalties, for committing the same behavior." 269 Ga. at 592. The full paragraph from which the phrase was culled reads as follows:

    Although the trial court relied on OCGA § 16-2-1 (defining the elements of

The majority's re-reading of <u>Dunagan</u>, which was cited in <u>Jackson v. State</u>, is limited and inaccurate. In <u>Dunagan</u>, we overruled all cases that had held "that an aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) can be committed by criminal negligence." 269 Ga. at 593. We further held that the trial court in <u>Dunagan</u> erred when it charged the jury that criminal negligence could be substituted for criminal intent. Id. We also decided that when an aggravated assault is based on OCGA § 16-5-20 (a) (2), there is no reason to charge on criminal negligence because it is the state of mind of the victim that is at play, and not the state of mind of the defendant. Id. at 594. Most importantly, we vacated Dunagan's conviction for felony murder

---

a crime) in charging the jury that criminal negligence can substitute for criminal intent, criminal intent and criminal negligence are not interchangeable in those instances where the mental culpability of the actor is the essential element that distinguishes two separate crimes, with separate penalties, for committing the same behavior. Such an instance exists with aggravated assault based on OCGA § 16-5-20 (a) (1) and reckless conduct: where the proscribed conduct is the result of the actor's criminal intent, the Legislature has determined that the offense constitutes the felony of aggravated assault whereas that same conduct which is the result of the actor's criminal negligence supports a conviction only of reckless conduct. OCGA § 16-5-60. See <u>Lindsey v. State</u>, 262 Ga. 665, 666 (2) (b) (424 SE2d 616) (1993) ("Reckless conduct is an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another"); see also <u>Brewton v. State</u>, 216 Ga. App. 346 (454 SE2d 558) (1995), overruled on others grounds, 266 Ga. 160 (465 SE2d 668) (1996) (crime of reckless conduct is an instance of criminal negligence, rather than a culpable act of either general or specific criminal intent).

Id.

2

because it was impossible to determine whether the jury based its verdict on OCGA § 16-5-20 (a) (1) (intentional conduct) or OCGA § 16-5-20 (a) (2) (intent of defendant inapposite). This same dilemma was at the heart of Jackson v. State.

Indeed, the majority's parsing of a single phrase in Dunagan and inaccurately re-casting the basic conclusions therein do not render untenable the core analysis in Jackson v. State that convictions for felony murder predicated on aggravated assault and involuntary manslaughter predicated on reckless conduct are mutually exclusive if it is unknown whether the jury's verdict on the aggravated assault was based on OCGA § 16-5-20 (a) (1) (intentional conduct) or OCGA § 16-5-20 (a) (2) (intent of defendant inapposite). See Jackson v. State, 276 Ga. at 412, n. 5. The majority opinion is otherwise unpersuasive as it rehashes arguments made by Justice Carley in his lone dissent to the majority opinion in Jackson v. State — arguments that were duly considered and rejected twelve years ago.[8]

It is obvious why there are those who would like to see Jackson v. State

---

[8] Notably, Justice Carley also dissented in Dunagan, which the majority now relies on heavily in this case in support of its dispensing with stare decisis.

3

and its progeny upended as it is troublesome and expensive to retry cases in these circumstances. It is hard to understand why Springer pursued his appeal on this ground since he successfully avoided a felony murder charge in the first instance.[9] In any event, it is not necessary to overrule Jackson v. State and its progeny to avoid such circumstances. Prosecutors and defense attorneys can avoid these situations by simply becoming familiar with the governing law (i.e., Jackson v. State and its progeny) and structuring verdict forms so there is no doubt as to what the jury is deciding when crimes involving intent and negligence are in play.

In short, the majority opinion does nothing to convince me that disturbing well-settled law is warranted in this case. Accordingly, I must respectfully dissent.

I am authorized to state that Justice Hunstein joins in this dissent.

Decided June 29, 2015.
Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 654.
Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney, for appellant.
Maryellen Simmons, Margaret E. Flynt, for appellee.

[9] Most other defendants seeking relief pursuant to Jackson v. State have been convicted of felony murder (aggravated assault) and involuntary manslaughter (reckless conduct).

Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney; Gary D. Bergman, amici curiae.