311 Ga. 374
FINAL COPY

S21A0010. BOOTH v. THE STATE.

ELLINGTON, Justice.

A Jackson County jury found Tina Marie Booth guilty of felony murder and neglect to an elder person in connection with the death of Linda Cowart.[1] On appeal, Booth contends that the trial court erred (1) by not declaring a mistrial after the jury returned mutually exclusive verdicts, and (2) by recalling the jury for deliberations after the jury was discharged. For the following reasons, we affirm.

The evidence at trial showed that Booth took custody of Cowart, her elderly mother, after Cowart was discharged from the

---

[1] Cowart died on March 15, 2017. A Jackson County grand jury indicted Booth for felony murder (Count 1), neglect to an elder person (Count 2), involuntary manslaughter (Count 3), and reckless conduct (Count 4). Booth was tried in September 2019. The jury ultimately found Booth guilty of felony murder (Count 1) and neglect to an elder person (Count 2) and not guilty of Counts 3 and 4. The trial court sentenced Booth to life imprisonment on the felony murder count. The neglect to an elder person count merged with the felony murder count. Booth filed a timely motion for new trial on September 13, 2019, which the trial court denied on June 24, 2020. Booth filed a timely notice of appeal, and the case was docketed to the term of this Court beginning in December 2020 and submitted for a decision on the briefs.

hospital in October 2016. Booth cared for Cowart in Booth's home with the assistance of a registered nurse until early December. Cowart was in Booth's unsupervised care from early December until March 15, 2017, when paramedics entered Booth's home in response to a report that Cowart was unconscious. Cowart was suffering from pressure-induced ulcers that were so severe that her bones were exposed. The paramedics took Cowart, who was then 74 years old, to the hospital, where she died from complications caused by the ulcers.

A Jackson County grand jury indicted Booth for four crimes in connection with Cowart's death: felony murder for causing Cowart's death while in the commission of the felony of neglect to an elder person; neglect to an elder person[2] by willfully depriving Cowart of

---

[2] OCGA § 16-5-101 (a) provides:

A guardian or other person supervising the welfare of or having immediate charge, control, or custody of a disabled adult, elder person, or resident commits the offense of neglect to a disabled adult, elder person, or resident when the person willfully deprives a disabled adult, elder person, or resident of health care, shelter, or necessary sustenance to the extent that the health or well-being of such person is jeopardized.

health care while she was supervising Cowart, a person over 65 years of age; involuntary manslaughter in that she caused Cowart's death while in the commission of the unlawful act of reckless conduct; and reckless conduct[3] in that she disregarded a substantial risk that her failure to seek medical aid for Cowart's ulcers would endanger Cowart's safety. At trial, following the presentation of evidence and deliberations, the jury initially found Booth guilty of all four counts.

The jury's initial verdicts were reviewed by the trial judge with counsel and published in open court. The trial court then told the jurors "that concludes your jury service," that he would shortly have them step back into the jury room, and that he would "come back there briefly and then you'll be dismissed, free to go." The jurors

---

[3] OCGA § 16-5-60 (b) provides:

A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

were subsequently polled at the request of defense counsel, after which the judge told the jurors that they were "dismiss[ed] to the jury room," with the option to come back to the courtroom for sentencing if they wished. The judge added that, "[i]f you don't want to stay for sentencing you certainly don't have to. But if you'll go ahead and retire to the jury room."

After the jury retired, defense counsel objected that the verdicts were mutually exclusive. The judge called a recess to research the issue, telling counsel he would go to the jury room to let the jurors know that there would be a delay before sentencing and, "If they want to wait, I'll let them wait. If they want to go, I'll let them go." Less than an hour later, the court called the jurors, none of whom had left the courthouse, back to the courtroom and told them that they were not released from jury service and that they should return to the jury room after picking up lunch. Booth moved for a mistrial, which the trial court denied.

The trial court subsequently told the jurors that their initial verdicts were mutually exclusive and that he was vacating those

verdicts. Over defense counsel's objection, the court charged the jury that they could not enter guilty verdicts on both felony murder and involuntary manslaughter and could not enter guilty verdicts on both neglect to an elder person and reckless conduct. The court gave the jury another verdict form and sent the jurors out of the courtroom to deliberate. The jury returned final verdicts finding Booth guilty of felony murder and neglect to an elder person and not guilty of involuntary manslaughter and reckless conduct.

1. Booth contends the trial court erred in denying her motion for a mistrial because the jury initially returned mutually exclusive verdicts, citing *State v. Owens*, 296 Ga. 205 (766 SE2d 66) (2014). In that case, we held that the jury's verdicts of guilty on the counts of felony murder and involuntary manslaughter were mutually exclusive because the felony murder count required the jury to find criminal intent for the underlying felony while the involuntary manslaughter count gave the jury the option of choosing the underlying predicate of reckless conduct, which requires criminal negligence. See id. at 210-211 (3) (citing *Jackson v. State*, 276 Ga.

5

408, 411-412 (577 SE2d 570) (2003)). Since our decision in *Owens*, however, we have reconsidered and rejected the proposition that a finding of an intentional infliction of injury precludes the element of criminal negligence in reckless conduct and, therefore, have concluded that convictions for both an offense requiring criminal intent and an offense requiring a lesser mens rea, based on the same act against the same victim, are not mutually exclusive. See *State v. Springer*, 297 Ga. 376, 381 (1) (774 SE2d 106) (2015).

"The term 'mutually exclusive' generally applies to two guilty verdicts . . . where it is both legally and logically impossible to convict on both counts[.]" *McElrath v. State*, 308 Ga. 104, 110 (2) (b) (839 SE2d 573) (2020) (citation, punctuation and emphasis omitted). As we explained in *Springer*, "multiple guilty verdicts for the same conduct that are based on varying levels of mens rea are not mutually exclusive." *Springer*, 297 Ga. at 381-382 (1). Where the essential distinction between two crimes is the level of mental culpability, "[s]uch distinction does not mean that findings of guilt as to both offenses are irreconcilable or that if the State proves the

6

greater mens rea, a jury would not be authorized to convict of the lesser included crime based on the finding of the greater." Id. at 381 (1). Booth cannot rely on *Owens* to show otherwise because *Springer* necessarily overruled *Owens.* See *Springer*, 297 Ga. at 383 (2) (overruling *Jackson*, 276 Ga. 408, "and its progeny").

Here, the conduct underlying the charges against Booth was her failure to provide health care for Cowart: intentionally by willfully depriving Booth of health care in the count of neglect to an elder person, which served as the felony underlying the count of felony murder, and negligently by disregarding a substantial and unjustifiable risk and grossly deviating from the standard of care in the count of reckless conduct, which served as the unlawful act underlying the charge of involuntary manslaughter. Because the crimes as charged could be accomplished by the same conduct, but reflect mens rea of varying levels, the verdicts returned by the jury finding Booth guilty of all four counts are not mutually exclusive. See *Gomez v. State*, 301 Ga. 445, 468 (13) (801 SE2d 847) (2017); *Springer*, 297 Ga. at 381 (1). It follows that Booth's claim of error is

without merit, notwithstanding the trial court's incorrect determination at trial that the verdicts were mutually exclusive. And after those initial verdicts were vacated, the jury's final verdicts plainly were not mutually exclusive.

2. Booth also contends that the trial court erred by recalling the jury for deliberations after the jury had been discharged. The premise of this claim of error is that the jury had initially returned mutually exclusive verdicts. In such an instance, the trial court may refuse to accept the verdicts and send the jury back to continue its deliberations. See *Dumas v. State*, 266 Ga. 797, 800 (2) (471 SE2d 508) (1996). Booth argues that the trial court could not send the jury back to continue its deliberations in this case, however, because the initial verdicts became final under OCGA § 17-9-40 once the jury had been discharged.

The jury was not precluded from deliberating a second time by OCGA § 17-9-40, which provides in applicable part that "after [a verdict] has been received, recorded, *and the jury dispersed*, it may not be amended in matter of substance, either by what the jurors

8

say they intended to find or otherwise." (Emphasis supplied.) The record shows that after being told that they were "dismiss[ed] to the jury room," and before being recalled to the courtroom, none of them left the courthouse. The jury remained together as a whole and did not separate before being asked to deliberate further. See *Benton v. Wesley Machinery*, 191 Ga. App. 334, 335 (1) (381 SE2d 577) (1989) (although the jury had been dismissed after returning its first verdict, it had not yet been dispersed, and the trial court did not err in allowing the jury to retire for further deliberations). Compare *Wells v. State*, 116 Ga. 87, 89 (42 SE 390) (1902) (verdict could not be amended because "when the verdict was agreed on and the jury dispersed the trial was, in effect, at an end"); *Smith v. State*, 59 Ga. 513, 514 (1877) (trial was at "an end when the jury made a verdict and separated"). Accordingly, the trial court was not precluded by OCGA § 17-9-40 from recalling the jury to deliberate further.

The trial court properly should have allowed the initial verdicts to stand because they were not actually mutually exclusive, as we explained in Division 1, supra. Booth, however, cannot show she was

9

harmed by the trial court's decision to vacate those verdicts and require the jury to deliberate a second time, given that the jury found her guilty of the greater offenses on both occasions and there is no allegation, much less proof, of any improper conduct or influence on the jurors while they were in the jury room in between their deliberations. As neither of Booth's claims of error has merit, the judgment of the trial court will stand.

*Judgment affirmed. All the Justices concur.*

Decided May 3, 2021.

Murder. Jackson Superior Court. Before Judge Primm.

*Erin V. Dekle*, for appellant.

*J. Bradley Smith, District Attorney, Gregory L. Wagner, Erica P. Shepley, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.