## S10A2064. THE STATE v. MIZELL.

(705 SE2d 154)

NAHMIAS, Justice.

Willie Mizell was convicted of malice murder and other crimes in May 2005. Almost five years later, the trial court granted Mizell a new trial. Several months after that, the trial court granted Mizell's motion to dismiss his indictment, ruling that the State had violated his due process rights by acting in bad faith in failing to preserve apparently exculpatory evidence. The State appeals from that order, and we reverse.

1. Viewed in the light most favorable to the verdict, the evidence at trial showed that Mizell beat a friend, Cassandra Bryant, to death on October 7, 2003, and put her body under some kudzu near a dumpster in the apartment complex where Mizell lived. In another dumpster at the apartment complex, the police found a rolled up orange towel. Inside were part of the victim's broken dentures, six cigarette butts, a pair of men's underwear, bloody shoes, two wash cloths, and a blue slipper. In a subsequent search of Mizell's apartment, the police found the other half of the victim's broken dentures, seven more cigarette butts, an orange towel like the one found in the second dumpster, and the other blue slipper.

On the day after the crimes, Mizell gave a statement to the police, in which he claimed that Stanley Brealand had borrowed his apartment and committed the murder. Later that month, the lead investigator sent numerous items of evidence to the GBI crime lab, including the cigarette butts from the apartment and the dumpster, DNA samples from Mizell and Brealand, and a piece of carpet taken from Mizell's apartment. On March 1, 2004, Mizell filed a general motion to preserve and permit testing of physical evidence. Later in March, the GBI returned the evidence to the Atlanta Police Department, with the note that "[t]his case may contain evidence that must be preserved in accordance with OCGA § 17-5-56."[1] In June 2004, Mizell filed a particularized motion to preserve and test physical evidence, specifically listing the two sets of cigarette butts.

In December 2004, apparently unaware that the cigarette butts were no longer in the possession of the GBI crime lab, the State

---

[1] OCGA § 17-5-56 (a) provides in relevant part that

governmental entities in possession of any physical evidence in a criminal case, including, but not limited to, a law enforcement agency or a prosecuting attorney, shall maintain any physical evidence collected at the time of the crime that contains biological material, including, but not limited to, stains, fluids, or hair samples that relate to the identity of the perpetrator of the crime as provided in this Code section. Biological samples collected directly from any person for use as reference materials for testing or collected for the purpose of drug or alcohol testing shall not be preserved.

obtained an order from the trial court directing the crime lab to conduct DNA testing of the dumpster cigarette butts. The order noted that the "[t]he State contends that this evidence is material in its prosecution of this case." The crime lab, however, indicated that it no longer had the cigarette butts and that it would conduct the test upon receiving the butts from the State.

Testing of the dumpster cigarette butts was not conducted before Mizell's March 2005 trial. Mizell did not testify at trial, but his defense, as asserted in his custodial statement, was that Breland had committed the murder. Breland, however, testified at trial and denied being in the area on the night of the crime, and his alibi was supported by testimony from his roommates and friends. A crime lab expert testified that the carpet from Mizell's apartment contained the victim's blood. She explained that the cigarette butts were not tested because the crime lab has a policy, due to budget and staffing constraints, that it will not test multiple items of evidence once it has tested evidence connecting the defendant with the crime. On cross-examination, the expert testified that DNA can be obtained from a cigarette butt and that if DNA had been obtained from one of the butts submitted for testing, she could have compared it to Breland's DNA sample.

After he was convicted, Mizell obtained new counsel and filed a motion for new trial, contending that his trial counsel provided ineffective assistance in failing to present evidence regarding comparison testing of any DNA found on the cigarette butts obtained from the apartment with the DNA of Breland. During the new trial proceedings, the trial court also asked why DNA testing had never been performed on the cigarette butts found in the dumpster, as directed by its pre-trial order. The State subsequently found the seven cigarette butts from the apartment, apparently in the District Attorney's evidence room, and had them tested, but the butts from the dumpster could not be located. At a motion for new trial hearing, the State introduced evidence, over objection, that one of the butts from the apartment contained the DNA of both the victim and Mizell and excluded Breland.

At the end of a motion for new trial hearing on March 17, 2010, the trial court indicated that it would continue the hearing on March 24. However, on March 19, 2010, the trial court granted the motion for new trial on the sole ground that the court "is persuaded that the issue of the State's failure to comply with the Court's order and test evidence which could have been exculpatory or inculpatory is dispositive of the motion." Mizell then filed a motion to dismiss the indictment based on the State's failure to preserve both sets of cigarette butts. On July 14, 2010, the trial court granted the motion based on the failure to preserve the butts found in the dumpster. The

dismissal order stated that Mizell's defense was that Breland had committed the murder, that Mizell's "ability to impeach Breland's testimony and alibi by placing Breland at the scene would have been pivotal in the defense of the case," and that Breland's DNA was available for testing. The court concluded that the "exculpatory value of the missing cigarette butts should have been apparent prior to the[ir] loss." The court also concluded that the State acted in bad faith in failing to preserve the evidence, because the State violated OCGA § 17-5-56 (a) and because the State disregarded Mizell's notice to preserve the evidence and the court's order to test the evidence.

2. The State contends that the trial court erred in granting Mizell's motion to dismiss the indictment based on the State's failure to preserve the cigarette butts from the dumpster. We agree.

"In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984)."

*Krause v. State*, 286 Ga. 745, 752 (691 SE2d 211) (2010) (citation omitted).

With regard to materiality,

the fact that evidence may be "potentially useful" in a defendant's attempt at exoneration is insufficient to sustain a claim that the defendant has suffered an abridgment of due process of law due to the destruction or loss of the evidence. The key is the "apparent exculpatory value" of the evidence prior to its destruction or loss and "apparent" in this context has been defined as "readily seen; visible; readily understood or perceived; evident; obvious."

*State v. Miller*, 287 Ga. 748, 754 (699 SE2d 316) (2010) (citations omitted).

In this case, Mizell has not shown that the cigarette butts found in the dumpster were constitutionally material to his defense. The

butts were "potentially useful" to the defense Mizell raised in his custodial statement and at trial — that Breland committed the crimes, but that does not establish that the butts had an "obvious" or "readily perceived" *exculpatory* value. *Miller*, 287 Ga. at 754. As far as the State knew at the time the butts disappeared, and indeed as far as we know today, the butts were more likely to be *inculpatory* of Mizell. See *Krause*, 286 Ga. at 752 (rejecting the defendant's similar lost-evidence claim because "[t]here was no apparent reason for the police to think that the [evidence] would tend to exonerate rather than further inculpate [the defendant]").

Thus, the DNA testing of the cigarette butts was initiated by the State after Mizell's arrest, based on the State's assertion that the evidence was inculpatory, that is, "material in its prosecution of this case." Moreover, before the dumpster cigarette butts were lost, the State had identified the victim's blood in Mizell's apartment, and her dentures, along with cigarette butts, were found in both the apartment and the dumpster. And the post-trial testing revealed that one of the cigarette butts found in the apartment contained both Mizell's and the victim's DNA, and not Breland's, further supporting the inference that the dumpster butts, if they had any evidentiary value, would be inculpatory. Under these circumstances, Mizell's contention that testing of the dumpster cigarette butts *would have*, as opposed to theoretically *could have*, supported his defense that Breland committed the crimes was pure speculation.

The trial court stated in its dismissal order that Mizell's "ability to impeach Breland's testimony and alibi by placing Breland at the scene would have been pivotal" to Mizell's defense. That is true, but the court's conclusion that the cigarette butts had "apparent" exculpatory value to that defense is not supported by the record. Instead, as the trial court correctly stated in its new trial order, the DNA testing "could have been exculpatory or inculpatory." For these reasons, we conclude that the lost cigarette butts were not constitutionally material and that the trial court therefore erred in granting Mizell's motion to dismiss the indictment. See *Miller*, 287 Ga. at 754-755; *Krause*, 286 Ga. at 752. Given this conclusion, we need not address the trial court's finding that the State acted in bad faith in losing the evidence.

3. Mizell also asserts that the trial court, in granting his motion for new trial, decided that the cigarette butts were constitutionally material and that the State acted in bad faith in losing the evidence. Mizell contends that the doctrines of collateral estoppel, res judicata, and law of the case therefore preclude the State from re-litigating those issues in opposing the motion to dismiss the indictment. We disagree.

Collateral estoppel and res judicata are inapplicable because both require a previous action between the same parties, and the trial court's orders came in the same action now on appeal. See *Slakman v. State*, 280 Ga. 837, 841 (632 SE2d 378) (2006). Moreover, the law of the case doctrine applies only when the same issue has been actually litigated and decided. See *State v. Lejeune*, 277 Ga. 749, 756 (594 SE2d 637) (2004); *Perez v. State*, 263 Ga. App. 411, 412 (588 SE2d 269) (2003). Here, Mizell did not file the motion to dismiss the indictment until after the trial court granted the new trial. Consequently, whether the lost cigarette butts were constitutionally material and whether the State acted in bad faith, as defined in the *Trombetta* and *Youngblood* line of cases, were not put in issue until that time, and in granting the motion for new trial, the trial court clearly did not decide those issues. Instead, the new trial order relies solely on the State's failure to comply with the court's order to test the cigarette butts, regardless of their "exculpatory or inculpatory nature," and the order does not mention whether the State acted in good or bad faith. Accordingly, Mizell's law of the case claim is without merit.

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 24, 2011.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Paige R. Whitaker, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*John W. Kraus*, for appellee.