**SECOND DIVISION
RICKMAN, C. J.,
MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 30, 2023**

# In the Court of Appeals of Georgia

A22A1467. THE STATE v. NEWBERRY.

RICKMAN, Chief Judge.

Tonya Newberry was indicted for furnishing prohibited items to an inmate and crossing the guard lines with drugs. After pleading not guilty, Newberry filed a motion to dismiss based on the State's failure to preserve video footage that formed the basis for her arrest. Following a hearing, the trial court granted the motion to dismiss, and the State appeals the dismissal of the charges. The State contends that the trial court erred in concluding that the video evidence was constitutionally material, and that no evidence supported the trial court's finding of bad faith by Georgia Department of Corrections officials. For the reasons that follow, we reverse.

At the motion to dismiss hearing, the warden of Washington State Prison testified that on October 14, 2019, he was observing inmate visitation on a live video

feed when he saw Newberry, who was there visiting her son, "go in her waistband, in the front, and pull out . . . I'm not sure at that time what it was, I just know she pulled out something from her waistband and she gave it to her son." The warden radioed the unit manager, who was in the same visitation space, and instructed her to make contact with Newberry's son. As she attempted to do so, he walked away and the item fell from his waistband, through the bottom of his pants, and onto the floor, where the unit manager retrieved it.

Newberry and her son were then handcuffed, and a Department of Corrections investigative team searched Newberry's vehicle. During the search, they found tobacco and white duct tape, which they believed was the same as duct tape they had recovered inside the prison.

The warden testified that the video footage of the visitation incident was not available to be provided to the defense because the prison had undergone computer and camera system upgrades and on that particular weekend, they were able to view live footage, but could not download the footage to a disk for evidence purposes. The warden acknowledged that the system had worked the weekends prior to and following the incident and that "policy states that every visitation has to be recorded and reviewed by the chief of security that following Monday to check for any

2

discrepancies" and to ensure that "staff is following policy and procedures when it comes to shaking down the visitation area." He testified that any footage of the incident at issue could no longer be accessed because the system had been completely upgraded.

Newberry was indicted for furnishing methamphetamine, marijuana, and tobacco to an inmate in violation of OCGA § 42-5-18 (b)[1] and (b.1),[2] and for crossing the guard lines with methamphetamine in violation of OCGA § 42-5-15.[3] After making repeated requests for the video footage, Newberry filed a motion to compel discovery. When the State responded that it had no video footage of the incident in

---

[1] OCGA § 42-5-18 (b) provides that "[i]t shall be unlawful for any person to obtain for, to procure for, or to give to an inmate . . . amphetamines, biphetamines, or any other hallucinogenic drugs or other drugs, regardless of the amount; any telecommunications device; or any other article or item without the authorization of the warden or superintendent or his or her designee."

[2] OCGA § 42-5-18 (b.1) provides that "[i]t shall be unlawful for any person to obtain for, to procure for, or to give to an inmate tobacco or any product containing tobacco without the authorization of the warden or superintendent or his or her designee."

[3] OCGA § 42-5-15 (a) provides that "[i]t shall be unlawful for any person to come inside the guard lines established at any state or county correctional institution . . . with or under the influence of any intoxicating liquor, amphetamines, biphetamines, or any other hallucinogenic or other drugs, without the knowledge or consent of the warden, superintendent, or his or her designated representative."

3

its possession, Newberry filed a motion to dismiss the charges against her. In her motion, Newberry argued that the video footage would demonstrate that she did not commit the charged crimes, and that she had no way to obtain comparable evidence by other means.

The trial court granted Newberry's motion from the bench and later entered a written order in which the court concluded that Newberry had been denied her right to due process because she was unable to examine the video evidence that served as the basis for her arrest and the subsequent search of her vehicle. The trial court ruled that the missing video footage was material and its "apparent exculpatory value" was the fact that "the State stated it was able to observe [Newberry] transfer contraband to the inmate and connect other evidence later gathered in the Investigator's search." The court also ruled that the State acted in bad faith in failing to preserve the evidence because the prison officials did not comply with Georgia Department of Corrections regulations requiring them to maintain video recordings of prisoner visitation. The State challenges both rulings.

In evaluating whether a defendant's constitutional right to due process was violated when the State failed to preserve evidence that could be exculpatory,

a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U. S. 51 (109 SCt 333, 102 LEd2d 281) (1988). To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U. S. 479 (104 SCt 2528, 81 LEd2d 413) (1984).

(Citation and punctuation omitted.) *State v. Mizell*, 288 Ga. 474, 476 (2) (705 SE2d 154) (2011).

And when considering materiality,

the fact that evidence may be "potentially useful" in a defendant's attempt at exoneration is insufficient to sustain a claim that the defendant has suffered an abridgment of due process of law due to the destruction or loss of the evidence. The key is the "apparent exculpatory value" of the evidence prior to its destruction or loss and "apparent" in this context has been defined as "readily seen; visible; readily understood or perceived; evident; obvious."

(Citation and punctuation omitted.) Id. at 476 (2).

Here, the only evidence regarding the content of the missing video footage is that it showed Newberry's commission of the charged crimes and was therefore

5

inculpatory. The record does not show that any exculpatory value of the footage was apparent before it became unavailable. See *State v. Miller*, 287 Ga. 748, 754-755 (699 SE2d 316) (2010) (facts did not show that exculpatory value of defendant's cell phone was obvious or evident to police or any other State actor before cell phone was destroyed). As a result, the evidence was not constitutionally material and the trial court therefore erred in granting Newberry's motion to dismiss the indictment. See id.; *State v. Cain*, 345 Ga. App. 904, 906 (815 SE2d 216) (2018) (dismissal of accusation reversed where there was no evidence to support defendant's speculation that lost video may have contained exculpatory evidence; instead, evidence showed that, when the video was lost, the police had every reason to believe it contained inculpatory evidence). Given this conclusion, we need not address the trial court's finding that the State acted in bad faith in failing to preserve the evidence. See *State v. Mizell*, 288 Ga. at 477 (2).

*Judgment reversed. Miller, P. J., and Pipkin, J., concur.*