NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 17, 2026

S25A1229.  OWENS v. THE STATE.

BETHEL, Justice.

In 2013, a jury found Maria Owens guilty of felony murder, involuntary manslaughter, and other crimes in connection with the death of eleven-month-old Jaylen Kelly. We reversed Owens's convictions, applying our since-overruled precedent providing that guilty verdicts for crimes with different mental states are mutually exclusive when based on one criminal act against one victim. See *State v. Owens*, 296 Ga. 205, 211–12 (2014) ("*Owens I*"). We abrogated that precedent the following year, concluding that guilty verdicts for negligence and intent crimes are not categorically mutually exclusive because proof of a more culpable mental state does not negate proof of a less culpable mental state. See *Springer v. State*, 297 Ga. 376, 380–81 (2015). Nonetheless, the trial court in

Owens's 2020 retrial instructed the jury that it could not find Owens guilty of both involuntary manslaughter (requiring criminal negligence, as charged) and aggravated assault and first-degree child cruelty (requiring criminal intent). The jury again found Owens guilty of felony murder and several other crimes.[1]

Owens now appeals her convictions, arguing, among other things, that the trial court's instruction was erroneous. We agree that the charge was erroneous and harmful as to Owens's homicide charges, because we rejected the mutually-exclusive-mental-states rule years before Owens's retrial, so we reverse Owens's felony murder conviction. But Owens may be retried for felony murder because the evidence was constitutionally sufficient to support the

---

[1] The crimes occurred on June 1, 2011. After this case was remanded in *Owens I*, Owens was retried in January 2020 on two counts of felony murder, one count of aggravated assault, and one count of cruelty to children in the first degree. The jury found Owens guilty on all counts. The trial court then sentenced Owens to serve life in prison on the first felony murder count and twenty years concurrent on the child cruelty count. The remaining counts merged or were vacated by operation of law. Owens filed a timely motion for new trial, which was amended several times beginning in 2023. The trial court denied the motion on April 23, 2025. Owens filed a timely notice of appeal, and the case was docketed to this Court's August 2025 term and orally argued on October 23, 2025.

guilty verdicts on those counts. We leave undisturbed Owens's conviction for child cruelty because the erroneous charge did not impact that conviction, but we vacate the sentence on that conviction because the sentencing disposition of that count will depend on the ultimate resolution of Owens's felony murder charges.

1. (a) We recited the evidence from Owens's first trial in detail in *Owens I*. Id. at 205–07.[2] In short, that evidence showed that on the morning of Jaylen's death, his parents left him in Owens's care on their way to work. Id. at 205–06. Jaylen was in good health that morning, and his parents testified that he was acting normally, including walking and playing with his siblings. Id. at 206. Owens contacted Jaylen's mother later that morning, telling her that Jaylen was having trouble breathing. Id. at 206. Owens then called 911, and emergency personnel responded, transported him to a hospital, and ultimately life-flighted Jaylen to an Atlanta children's hospital. Id. Doctors could not stabilize Jaylen, who was in cardiac

---

[2] We addressed the sufficiency of the evidence supporting Owens's convictions in *Owens I*, so we laid out that evidence in detail and viewed it in the light most favorable to the verdicts. 296 Ga. at 207.

arrest upon arrival, and he died shortly after. Id.

Police arrested Owens the following day. Id. During a pre-arrest interrogation, Owens told police that Jaylen was congested, that she had lifted him by one arm and "patted" or "hit" him on his side to make him cough, and that Jaylen screamed when she did so. Id. at 206–07. She also told police that Jaylen was acting normally before that. Id. at 207.

At trial, the medical examiner testified that Jaylen's cause of death was blunt-force trauma to the torso and that his manner of death was homicide. Id. The trauma, which was caused by a "very hard blow," caused fatal internal bleeding from a fracture in Jaylen's back and would have rendered him unable to walk. Id. Owens's own medical expert largely agreed, but he opined that the fracture had occurred several days before Jaylen's death. Id. He could not, however, explain how Jaylen would have been able to walk or otherwise not exhibit any feelings of pain. Id. at 207 n.6.

The jury ultimately acquitted Owens of malice murder but found her guilty of felony murder, felony involuntary manslaughter,

aggravated assault, and first-degree child cruelty. Id. at 205 n.1. The trial court sentenced Owens to serve ten years in prison on the involuntary manslaughter charge and purported to merge the other counts into the malice murder count. The State appealed, arguing that the trial court sentenced Owens incorrectly. Id. at 205–06. We agreed with the State but ultimately reversed Owens's involuntary manslaughter conviction because the felony murder and involuntary manslaughter verdicts could have reflected a finding that Owens acted with both criminal intent and criminal negligence during a single criminal act, which would render those verdicts "mutually exclusive." Id. at 208–10 (quoting *Jackson v. State*, 276 Ga. 408, 410 (2003)). An ambiguity in the verdict form "created a reasonable possibility that the jury found [Owens] guilty of felony involuntary manslaughter based on reckless conduct"— mutually exclusive of the guilty verdicts on her felony murder counts. Id. So we vacated all of Owens's convictions and remanded for a new trial. Id. at 212.

(b) The following year, we abrogated *Owens I*. In *Springer v. State*, we held that "multiple guilty verdicts for the same conduct

5

that are based on varying levels of mens rea are not mutually exclusive." 297 Ga. at 382. We reasoned that, when one crime is a lesser-included offense of another crime, and the only distinction between them is the level of mental culpability, proof of a more culpable mental state does not negate proof of a less culpable mental state. Id. at 381. So guilty verdicts for both a crime requiring criminal intent and its lesser-included offense requiring criminal negligence are not mutually exclusive. Id. at 381–82. Accordingly, we overruled *Jackson v. State*, the source of the mutually-exclusive-mental-states rule, and other cases relying on it. Id. at 383 & n.4.

(c) Owens was retried in 2020. The evidence presented at the second trial largely mirrored the evidence from the first. As at Owens's first trial,[3] both parties presented extensive evidence and testimony about the source of Jaylen's injuries, and Owens's mental culpability was a central issue. Owens again acknowledged that she

---

[3] Because we are now evaluating whether a clear error affected the outcome of Owens's retrial, we review the record de novo and weigh the evidence as we expect a reasonable jury would have. See *Smith v. State*, 313 Ga. 584, 588 (2022).

6

"patted" Jaylen on the back on the day of his death, but she asserted that her conduct at most exacerbated a preexisting injury caused by someone else. The State in turn emphasized testimony that Jaylen's spinal injuries would have made it impossible to walk and were so catastrophic that they could have resulted only from intentional conduct inflicted while Jaylen was in Owens's care. The jury ultimately found Owens guilty on all counts, but it left the verdict form blank as to the lesser-included involuntary manslaughter charge under each felony murder count.

2. On appeal, Owens first argues that the trial court's response to a jury question—informing the jury that it could not find Owens guilty of involuntary manslaughter if it found her guilty of aggravated assault and child cruelty—was incorrect because we overruled *Owens I* and other cases concerning our former mutually-exclusive-mental-states rule well before Owens's retrial. We agree.

(a) The record reflects that, during the initial jury charge, the trial court twice addressed the relationship between criminal intent and criminal negligence. The court instructed the jury that it could

7

not find Owens guilty of both felony murder and involuntary manslaughter because the former was predicated on an intent crime and the latter on a negligence crime and the two mental states were mutually exclusive. The trial court also instructed the jury that if it found Owens guilty of involuntary manslaughter, it could not also find her guilty of first-degree child cruelty and aggravated assault. Owens did not object to any part of the jury charge.

The jury posed several questions to the trial court during deliberations. Relevant here, one question asked: "If we were to find the defendant guilty of [aggravated assault and first-degree child cruelty], is involuntary manslaughter on counts one and two still an option?" Without consulting the parties, the trial court responded:

> [N]o, because ... they would be inconsistent verdicts, because counts three and four require criminal intent, and ... the lesser offense of one and two, involuntary manslaughter, with the underlying misdemeanor being reckless conduct, requires -- is a crime of negligence, and you can't have negligence and intent.

Owens's trial counsel immediately responded, "Your honor, if we could check that one second." Without acknowledging that comment, the trial court stated to the jury, "You have to have one or the other.

8

You can't have intent plus negligence. The law says that they are mutually exclusive."

After the jury returned to the jury room, the trial court asked the parties if they had anything to add. Owens's trial counsel said, "I'd just like to double-check that. I have a case that our appeals section sent that I'm going to read real quick." Owens's trial counsel pointed to *Springer* for the proposition that guilty verdicts for aggravated assault and reckless conduct are not mutually exclusive. But the trial court was unpersuaded, stating that *Owens I* was "the exact facts of this case" and controlled on the mutual exclusivity issue. The trial court later reasoned that, pursuant to the "law of the case" doctrine, it was constrained to instruct the jury on mutually exclusive verdicts consistent with *Owens I*.

(b) The parties dispute which standard of review applies here. Owens argues that her trial counsel preserved the issue for appeal with a contemporaneous objection to the trial court's answer to the jury question. The State argues that Owens's claim is subject only to plain error review because her trial counsel failed to object to the

trial court's answer before the jury returned to deliberate. We need not resolve this dispute because, for the reasons explained below, her first enumeration succeeds under either standard of review.[4] So we apply the more stringent plain error review: Owens must show that the trial court made a legal error that was not affirmatively waived, was "clear and obvious," likely affected the outcome of the trial, and "seriously affected the fairness, integrity, or public

---

[4] The State cites OCGA § 17-8-58(b), which provides that "[f]ailure to object … to any portion of the [jury] charge … before the jury retires to deliberate … preclude[s] appellate review of such portion of the jury charge" unless that charge constitutes plain error. The State argues that Owens failed to preserve her objection to the answer to the jury question because she did not object until after the jury returned to the jury room. We note, however, that the trial court answered the jury's question without conferring with the parties or giving them time to object and immediately excused the jury to return to deliberations before asking the parties for their input on the response. Given that unusual procedure (for which the court later apologized, Owens's trial counsel arguably could have done nothing more to preserve this issue. On the other hand, toward the end of trial the trial court asked the parties whether the jury could find Owens guilty of the predicate felonies if it found her guilty of involuntary manslaughter—essentially the answer the trial court later gave in response to the jury question, just stated in the inverse. Owens's attorney answered affirmatively. And she did not object when the trial court reiterated that misstatement of law. Nor did she object when the trial court again reiterated that misstatement to the jury during the initial charge. So Owens arguably waited until the last possible moment to object to that misstatement, apparently because she learned of our ruling in *Springer* only after the jury left to deliberate. Regardless, we need not resolve the preservation question here.

reputation of judicial proceedings." *Dees v. State*, 322 Ga. 498, 500–01 (2025). See also, e.g., *Hampton v. State*, 302 Ga. 166, 167–68 (2017) (applying plain error review under OCGA § 17-8-58(b) to forfeited argument about trial court's answer to jury question).

(i) Owens has shown that the trial court's answer to the jury question was legal error and was not affirmatively waived. We view jury instructions, including a recharge given in response to a jury question, as a whole to determine whether they accurately state the law. See, e.g., *Stepp-McCommons v. State*, 309 Ga. 400, 405–06 (2020); *Guajardo v. State*, 290 Ga. 172, 175–76 (2011). And a trial court's failure to state the law accurately in charging the jury can be legal error. See, e.g., *Stanbury v. State*, 299 Ga. 125, 129–31 (2016). Here, the trial court answered the jury's question by informing the jury that, if it found Owens guilty of aggravated assault and child cruelty (intent crimes), it could not also find her guilty of involuntary manslaughter based on reckless conduct (a negligence crime). That was consistent with the trial court's earlier instructions, including multiple statements that the jury could not convict Owens of

11

negligence and intent crimes and a statement that, if the jury found Owens guilty of involuntary manslaughter rather than felony murder, it could not also find her guilty of the predicate felonies—aggravated assault and child cruelty. The trial court invariably conveyed to the jury that guilty verdicts for negligence crimes and intent crimes are mutually exclusive and prohibited the jury from returning guilty verdicts on both negligence and intent crimes.

But "convictions for both an offense requiring criminal intent and an offense requiring a lesser mens rea, based on the same act against the same victim, are not mutually exclusive." *Booth v. State*, 311 Ga. 374, 376 (2021). As we held years before Owens's retrial, proof of a more culpable mental state necessary for conviction of a greater offense does not negate proof of a less culpable mental state necessary for conviction of a lesser-included offense. *Springer*, 297 Ga. at 380–82. So a defendant can, for example, be found guilty of aggravated assault (an intent crime) and its lesser-included offense of reckless conduct (a negligence crime, and a predicate for involuntary manslaughter). Id. Proof of criminal intent

12

required for aggravated assault subsumes rather than negates proof of criminal negligence required for reckless conduct or for involuntary manslaughter based on reckless conduct. Id. at 382–83. That means the jury here *could* have found Owens guilty of involuntary manslaughter based on reckless conduct, aggravated assault, and child cruelty—the verdict it raised as a possibility in its question to the trial court, and nearly the exact verdict we approved in *Springer*.[5] The trial court repeatedly told the jury otherwise, and that was error. See, e.g., *Stanbury*, 299 Ga. at 129–31.

Moreover, the parties do not argue that Owens affirmatively waived this error. The State argues that, at most, Owens forfeited the issue by failing to timely object to the trial court's answer to the jury question. The "failure to object is more appropriately described as a forfeiture," *Cheddersingh v. State*, 290 Ga. 680, 684 (2012), so

---

[5] *Springer* did not involve a child cruelty charge, but reckless conduct can be a lesser-included offense to first-degree child cruelty, see *Shah v. State*, 300 Ga. 14, 19 (2016), just as it can be a lesser-included offense to aggravated assault, see *Springer*, 297 Ga. at 377. The inclusion of a child cruelty count does not make our precedent any less clear: the trial court should have answered the jury's question affirmatively. See id.

13

Owens has satisfied the first prong of plain error review.

(ii) Owens has also shown that the trial court's error was clear and obvious. A defendant challenging a jury instruction on plain error review cannot merely demonstrate that the trial court committed "actual legal error"; she must show that the challenged instruction had "an obvious defect rather than a merely arguable defect." *Hill v. State*, 321 Ga. 177, 181–82 (2025) (quotation marks omitted). Generally, a defect is obvious when there is "on-point controlling authority or the unequivocally clear words of a statute or rule that plainly establish that the trial court erred[.]" *Dees*, 322 Ga. at 500 (quotation marks omitted). And "whether an error is considered 'clear or obvious' under the second prong of the plain error test is judged under the law existing at the time of appeal." *Lyman v. State*, 301 Ga. 312, 318 (2017).

Here, the trial court told the jury that it could not find Owens guilty of both involuntary manslaughter based on reckless conduct (a negligence crime) and guilty of aggravated assault and first-degree child cruelty (intent crimes). But unequivocal, on-point

14

precedent provides that "multiple guilty verdicts for the same conduct that are based on varying levels of mens rea *are not mutually exclusive*." *Springer*, 297 Ga. at 382 (emphasis added). We have explicitly applied that rule to the verdict contemplated in the jury question—guilty of aggravated assault and guilty of involuntary manslaughter based on reckless conduct. See id. at 376. See also note 5, *supra*. And we have expressly overruled cases, including the earlier decision in *this* case, which referenced our since-rejected mutually-exclusive-mental-states rule. See *Booth*, 311 Ga. at 376 ("*Springer* necessarily overruled *Owens*."). Accordingly, the trial court clearly and obviously erred by instructing the jury that it could not find Owens guilty of involuntary manslaughter based on reckless conduct as well as aggravated assault and child cruelty. See *Springer*, 297 Ga. at 381–83. See also, e.g., *Johnson v. State*, 316 Ga. 672, 688 (2023) (clear and obvious error to instruct jury, contrary to this Court's precedent, that affirmative defenses require defendant to admit to acts causing victim's death).

15

Contrary to the trial court's reasoning, the erroneous instruction was not required by the "law of the case" doctrine. That rule provides that when an issue is "actually litigated and decided" in this Court or the Court of Appeals, the resolution of that issue is binding in all future appellate and trial proceedings in the same case. *State v. Mizell,* 288 Ga. 474, 478 (2011). But the law of the case doctrine applies only to issues expressly decided, not to "implied" rulings or to dicta. *Currid v. DeKalb State Court Prob. Dep't*, 285 Ga. 184, 186 n.5 (2009); *Slakman v. State*, 280 Ga. 837, 841 (2006). So identifying the issue an earlier appellate decision actually addressed is essential to determining how the law of the case doctrine applies— if at all.

Here, the trial court apparently believed the law of the case doctrine required it to apply mutual exclusivity caselaw as it stood when we decided *Owens I.* But the law of the case doctrine does not freeze all statutory and decisional law in place at the time of an earlier appeal; it precludes revisiting discrete issues "actually litigated and decided" in that earlier appeal, even if the law

16

applicable to that issue has subsequently changed. See *Hicks v. McGee*, 289 Ga. 573, 578–79 (2011) (law of the case doctrine "applies only to actual decisions, not to issues … never ruled upon" or to "implied" rulings (quotation marks omitted)). And *Owens I* actually litigated and decided only one relevant issue: whether the ambiguous felony murder and involuntary manslaughter verdicts rendered by Owens's first jury were mutually exclusive.[6] 296 Ga. at 211–12. We answered affirmatively, concluding that the verdict form did not identify the predicate for involuntary manslaughter, "creat[ing] a reasonable probability that the jury found [Owens] guilty of" both felony murder based on an intent crime and involuntary manslaughter based on a negligence crime and rendering those verdicts "mutually exclusive." Id. But we did not address mutual exclusivity as to any other verdicts, including the one raised in the jury's question below. That verdict—guilty of involuntary manslaughter, aggravated assault, and child cruelty—

---

[6] *Owens I* also addressed a jurisdictional issue not implicated here. 296 Ga. at 207–08.

17

was not challenged in *Owens I* and we did not address it. So the trial court was not required (or authorized) to tell the jury that it could not find Owens guilty of involuntary manslaughter predicated on reckless conduct, aggravated assault, and child cruelty. The trial court clearly and obviously erred when it told the jury otherwise.

(iii) Further, Owens has shown that this error was harmful. To demonstrate harm under plain error review, a defendant must establish a "reasonable probability"—one "sufficient to undermine confidence in the outcome"—that the "result of the proceeding would have been different" without the challenged error. *Merritt v. State*, 311 Ga. 875, 885 (2021) (quotation marks omitted).

We agree with Owens: there is a reasonable probability that the result of her retrial would have been different had the trial court answered the jury question correctly. The question's phrasing—"If we were to find the defendant guilty of counts three and four, is involuntary manslaughter on counts one and two still an option?"— suggests the jury was at least contemplating finding Owens guilty of aggravated assault, first-degree child cruelty, and involuntary

18

manslaughter. But by answering the question in the negative, the trial court confirmed its repeated misstatements regarding mutually exclusive mental states and led the jury to believe that finding Owens guilty of aggravated assault and child cruelty would require finding her guilty or not guilty of felony murder—nothing else. And the evidence that Owens caused Jaylen's death was strong. So there is a reasonable probability that, when the jury ultimately found Owens guilty of aggravated assault and child cruelty, the trial court's erroneous "all or nothing" explanation of the murder charges led the jury to find Owens guilty of felony murder rather than involuntary manslaughter. And that substantially increased Owens's sentencing exposure. See OCGA §§ 16-5-1(e)(1) (felony murder punishable by death, life without parole, or life with parole); 16-5-3(a) (felony involuntary manslaughter punishable by imprisonment between one and ten years). Given the centrality of the mens rea issue at trial, the jury's apparent confusion about it, the trial court's improperly ruling out a valid verdict, and the strong evidence that Owens caused Jaylen's death, there is a reasonable

probability that—but for the trial court's error—the jury would have found Owens guilty of involuntary manslaughter rather than felony murder. So Owens has shown that error was harmful. Cf. *Shah*, 300 Ga. at 22 (instructional error not harmless when omitting instruction deprived jury of ability to find defendant guilty of lesser crimes).

The State disagrees, citing *Booth* as support for its argument that the trial court's error here was harmless. But *Booth* does not help the State. There, the trial court rejected as mutually exclusive the jury's initial verdict finding the defendant guilty of both negligence and intent crimes and instructed the jury that it could not return guilty verdicts for both negligence and intent crimes. 311 Ga. at 374–75. We held that the error was harmless because the jury found the defendant guilty of the offense with the longest sentence (felony murder) both before and after the erroneous vacatur. Id. at 377. Here, the jury had not returned a verdict when the trial court answered the jury question erroneously. And that answer foreclosed a guilty verdict on a lesser crime that the jury's note suggested it

was considering. So while the jury in *Booth* found the defendant guilty of felony murder both before and after the perceived mutual exclusivity error, this jury may have found Owens guilty of felony murder only after the trial court's intervening, incorrect instruction. Owens has thus shown harm from the trial court's clear and obvious instructional error. Cf. id. (mutual exclusivity error harmless "given that the jury found [the defendant] guilty of the greater offenses on both occasions and there is no allegation, much less proof, of any improper conduct or influence on the jurors while they were in the jury room in between their deliberations").

Even though Owens has shown harmful error as to the felony murder count, she has not shown a reasonable probability that the verdict on the child cruelty count would have been different without the instructional error. Nothing about the answer to the jury question—informing the jury that it could not find Owens guilty of involuntary manslaughter and the predicate felonies—confused the proper standard for conviction on the predicate felonies or otherwise misstated the jury's options on those counts. To illustrate, had the

21

jury acquitted Owens of felony murder but found her guilty of aggravated assault and child cruelty, the trial court's error would not matter. Finding Owens guilty of the predicate felonies but not guilty of all homicide charges would simply mean the trial court's error prevented the jury from rendering a "harsher" verdict (guilty of the predicate counts *and* involuntary manslaughter) than the one it rendered. Owens would be no worse off than if the trial court had answered the third jury question correctly. And the record does not suggest that the trial court's removing a potential verdict on the murder counts encouraged the jury to find Owens guilty rather than not guilty of child cruelty. Nor does the record suggest any jury confusion about what the State was required to show to support a guilty verdict on that count. In short, the trial court's error neither took a more "lenient" verdict for child cruelty off the table nor precluded or discouraged acquittal on that count. And the record does not suggest the trial court's error regarding the homicide counts otherwise influenced the jury's verdict on the child cruelty count. So Owens has not shown harm as to her child cruelty

conviction.[7]

In a supplemental brief, Owens resists this conclusion, arguing that the trial court's error requires both of her convictions to be reversed.[8] She cites *Schmitt v. State*, 318 Ga. 835 (2024), and *McIver v. State*, 314 Ga. 109 (2022), as "examples of charging errors that caused reversal of predicate felonies even without a specific nexus to those charges." But neither helps Owens because, in both cases,

---

[7] The dissent questions the weight we have given to possible interpretations of the jury question. But our analysis does not require reading tea leaves based on the jury question's wording. Given the strong evidence that Owens caused Jaylen's death, there *is* a reasonable probability that removing a lesser-included offense on the homicide counts nudged the jury toward finding Owens guilty of felony murder rather than not guilty of all homicide charges. We need not divine the jurors' thoughts (nor do we pretend to do so) to recognize that the trial court's mistaken instruction created a reasonable possibility that the jury found Owens guilty of a more serious homicide offense than it otherwise would have. But nothing about that error can be said to confuse the proper legal requirements for a guilty verdict on the predicate counts. The jury question created an opportunity for the trial court's error; it did not control the scope of that error. Accordingly, there *is not* a reasonable probability that removing a lesser-included offense on the homicide counts nudged the jury in any direction whatsoever regarding the predicate offenses.

[8] Owens did not argue in her opening brief that this instructional error affected her child cruelty conviction, instead focusing solely on the felony murder conviction. And while Owens initially conceded at oral argument that the instructional error implicated only her felony murder convictions, she filed a supplemental brief to change her answer. She is not entitled to have this argument considered, see, e.g., *Bostic v. State*, 32 Ga. 688, 694 (2025), but we will address it anyway.

23

the trial court's instructional error deprived the defendant of a plausible defense theory that would have enabled the jury to find him not guilty of both felony murder and the applicable predicate crime. *Schmitt*, 318 Ga. at 846–47 (trial court erroneously prevented defendant from raising accident defense, which would have been a defense to felony murder and predicate aggravated assault); *McIver*, 314 Ga. at 142 (trial court erroneously prevented defendant from raising unlawful manner involuntary manslaughter as lesser-included offense, which would have allowed jury to find him guilty only of a negligence crime, not guilty of felony murder and predicate aggravated assault). We reversed convictions for felony murder and the predicate offenses in those cases because, had the correct instruction been given, the jury in each case could have (and possibly would have) acquitted the defendant of *both* charges.

Here, however, the erroneous answer to the jury question prevented the jury only from finding Owens guilty of involuntary manslaughter, aggravated assault, and child cruelty. That verdict would have been the result of lenity or compromise, not a logically

24

consistent defense theory that Owens wanted to present but could not. The harm in *Schmitt* and *McIver*—being wrongly prevented from raising a defense to a higher charge that would have meant acquittal of a lesser charge—is absent here. Owens has not shown a reasonable probability that, had the trial court not misstated the law, the jury would have acquitted Owens of child cruelty.[9]

---

[9] The dissent expresses concern about this conclusion and suggests we ought to reverse both of Owens's convictions. But here, as in other contexts, the "remedy" ought to be "commensurate with the mischief." *Price v. Bradford*, 5 Ga. 364, 371 (1848). If an error affects only some guilty verdicts, the remedy should address only those verdicts. See, e.g., *United States v. Irons*, 31 F4th 702, 711–15 (9th Cir. 2022) (reversing predicate conviction based on plainly erroneous jury instruction and affirming related but unaffected compound conviction). Owens has at most shown that acquittal on the child cruelty count but for the trial court's error is "conceivable"; she has not shown that the likelihood of acquittal is "substantial." *Hill v. State*, 291 Ga. 160, 164 (2012) (quotation marks omitted); *Floyd v. State*, 321 Ga. 717, 728 (2025) (noting that plain error harm analysis equates to ineffective assistance of counsel prejudice analysis). There is no reason—logical, legal, or otherwise—why she should get a windfall by demonstrating harm only as to some part of the verdict below. See *State v. Williams*, 308 Ga. 228, 232 n.8 (2020) ("When plain error analysis is applied on appeal, *the appellant* has to make an affirmative showing that the error probably did affect the outcome below." (quotation marks omitted)).

We do not see it as an obstacle that this Court has not yet distinguished the effects of a plainly erroneous jury instruction on some of a defendant's convictions but not others. Absence of perfectly analogous cases doesn't mean we must reverse both of Owens's convictions now.

Plus, multiple federal appellate courts have reversed only some of a defendant's convictions based on a plainly erroneous jury instruction that affects only some of those convictions—even when the counts are arguably "intertwined" or when the jury "posed a question about those charges," dissent

25

(iv) Owens has also satisfied the final prong of plain error review—that the clear and obvious legal error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Dees*, 322 Ga. at 501. This analysis is "case-specific and fact-intensive," *White v. State*, 305 Ga. 111, 125 (2019) (Bethel, J., concurring specially) (quoting *Puckett v. United States*, 556 US 129, 142 (2009)), and considers whether allowing the error to stand would result in a "miscarriage of justice," id. (quoting *United States v. Olano*, 507 US 725, 736 (1993)). In the jury instruction context, we

---

at 5,6. So while the outcome of this case is uncommon, it is not unprecedented. See, e.g., *Irons*, 31 F4th at 711–15 (affirming defendant's predicate drug distribution and possession convictions but reversing, based on plainly erroneous answer to jury question, conviction for compound charge of possessing a firearm in furtherance of those drug crimes); *Piette*, 45 F4th at 1162–64 & n.5 (reversing defendant's kidnapping conviction based on plainly erroneous burden-of-proof instruction for statute of limitations defense to that count, while affirming defendant's conviction for traveling with intent to have sexual relations with a minor—against the same victim—when defendant first claimed in oral argument that instructional error on one count required reversal of both counts); *United States v. Simpson*, 845 F3d 1039, 1060–63 (10th Cir. 2017) (concluding trial court plainly erred in instructing jury on constructive possession, and court reversed some drug and firearm possession charges but affirmed others because "the outcome on [one count] likely would have stayed the same with a legally correct instruction"); *United States v. Stansfield*, 101 F3d 909, 919–22 (3d Cir. 1996) (reversing defendant's witness tampering conviction based on plainly erroneous jury instruction, which increased defendant's sentencing exposure, but affirming related charges unaffected by instructional error).

often conclude that plainly erroneous instructions on central issues warrant reversal because their "expected result is not [jury] enlightenment, but [jury] confusion." *Cheddersingh*, 290 Ga. at 682, 686. For example, erroneously omitting a required accomplice corroboration charge or misconstruing the presumption of innocence undermines a trial's fairness because the jury "was never instructed how to properly" carry out its deliberations. *Doyle v. State*, 307 Ga. 609, 614–15 (2020). Likewise, erroneously precluding a verdict that is "linguistic[ally] and psychological[ly]" "contradictory" but legally compatible, see *Springer*, 297 Ga. at 380 (cleaned up)—as the trial court did here—seriously affected the fairness of Owens's retrial. It misdirected the jury's deliberations and foreclosed a permissible, more lenient verdict. So Owens has satisfied each prong of plain error review, and we reverse her felony murder conviction.

3. Further, the State may retry Owens for felony murder because the evidence was constitutionally sufficient to support guilty verdicts on those counts. Evidence is constitutionally sufficient to sustain a conviction if, when viewed "in the light most

favorable to the verdicts," "any rational trier of fact could have found the defendant guilty beyond a reasonable doubt" of the charged crime. *Foster v. State*, 322 Ga. 425, 429 (2025) (quotation marks omitted). It is for the jury to resolve "[c]onflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." Id. (quotation marks omitted). So to secure a conviction for felony murder predicated on first-degree child cruelty, the State had to prove beyond a reasonable doubt that Owens "maliciously caused a child under the age of 18 cruel or excessive physical or mental pain, and that, in the commission of that felony act, [she] caused the [victim's] death." Id. (cleaned up). Similarly, securing a conviction for felony murder based on aggravated assault required the State to prove beyond a reasonable doubt that Owens caused the victim's death while "attempting to commit a violent injury to the person of another with a deadly weapon." *Whisnant v. State*, 322 Ga. 253, 258 (2025) (cleaned up).

As noted above, Jaylen demonstrated no signs of injury on the morning of his death. Within a few hours of being placed in Owens's

care, he had died of blunt force trauma severe enough to nearly sever his spine. All of the expert witnesses to address Jaylen's injuries, include Owens's own expert, agreed that Jaylen's cause of death was homicide by blunt force trauma, that said trauma was inflicted intentionally, and that it would normally render a young child unable to walk or possibly unable to move. So a jury could reasonably conclude that Owens must have inflicted that trauma and disbelieved her self-serving testimony that she did not—especially when Owens admitted to "patting" Jayden while he was in her care and repeatedly expressed concern over whether she "hit him too hard." See *Foster*, 322 Ga. at 429–30.

We thus have no trouble concluding the evidence was constitutionally sufficient to sustain Owens's convictions. It authorized the jury to conclude that Owens—by nearly severing Jaylen's back—maliciously inflicted excessive physical or mental pain against eleven-month-old Jaylen and find her guilty of first-degree child cruelty. It was also sufficient to conclude that, in committing that child cruelty, Owens caused Jaylen's death. See id.

at 429 (rejecting sufficiency argument when victim "had no serious injuries on the morning of" death, suffered a "severe beating" after being "alone with [defendant] for a few hours," and died soon after). The evidence was also sufficient for the jury to conclude that Owens attempted to commit a violent injury to Jaylen's person with some deadly weapon. And it was sufficient for the jury to conclude that, in committing that aggravated assault, Owens caused Jaylen's death. See, e.g., *Williams v. State*, 299 Ga. 447, 448–49 (2016) (rejecting sufficiency argument when defendant was last person to care for infant victim, defendant admitted to shaking the infant—allegedly to dislodge mucous, and victim sustained "violent acceleration-deceleration" which caused numerous acute injuries and "led to her death"); *Hinkson v. State*, 310 Ga. 388, 389–91 (2020) (evidence sufficient to sustain conviction for felony murder based on aggravated assault when defendant was last person to care for eight-month-old victim, admitted to picking up and putting down victim "too hard," and medical examiner testified that victim died from "abusive head injury"). Owens may be retried for felony murder.

4. Finally, we explain how reversing Owens's felony murder conviction affects the other counts of which she was found guilty. The jury found Owens guilty of two counts of felony murder, one count of aggravated assault, and one count of first-degree child cruelty. The trial court sentenced Owens on the first felony murder count (based on aggravated assault) and on the child cruelty count; the second felony murder count was vacated by operation of law, and the aggravated assault count merged into the first felony murder count. Because we reverse Owens's felony murder conviction, the guilty verdict on the second felony murder count is no longer vacated by operation of law and is reversed for the same reason as the first felony murder count. See *Allaben v. State*, 299 Ga. 253, 257 n.6 (2016) (noting that vacated felony murder count no longer vacated after malice murder conviction reversed, reversing felony murder count for same reason as malice murder count). Likewise, the guilty verdict for aggravated assault unmerges and is unaffected by the trial court's instructional error for the same reason as the child cruelty verdict. See *Brundage v. State*, 320 Ga. 721, 731–32 (2025)

31

("By reversing the felony murder conviction in which the felon-in-possession count merged, that predicate felony count no longer stands merged.").

But we vacate Owens's child cruelty sentence. The trial court's instructional error provides no basis for reversing that conviction, but sentencing (or not sentencing) on that count will be contingent on what happens on remand. For example, if the State chooses to retry Owens on the felony murder counts and the jury again returns guilty verdicts, the trial court would have the discretion to decide upon which felony murder verdict to enter a conviction and sentence and which verdict would be vacated by operation of law. That decision might impact any merger and sentencing analysis on the remaining counts. See *Hinton v. State*, 304 Ga. 605, 608 (2018) ("[W]here a defendant is found guilty on multiple counts of felony murder against the same victim, the decision as to which of the felony murder verdicts should be deemed vacated—a decision that may affect which other verdicts merge and thus what other sentences may be imposed—is left to the discretion of the trial

court."). But if the State chooses, for example, to nolle prosse the felony murder counts, the trial court could immediately sentence Owens on one or both predicate felony counts (depending on the resolution of any potential merger issues), and Owens would be entitled to directly appeal the conviction or convictions. See *Brundage*, 320 Ga. at 732. In either scenario, the ultimate disposition of the child cruelty count depends on possible dispositions of the felony murder counts, and potentially the trial court's analysis and discretion on remand. If we affirmed Owens's sentence on the child cruelty count now, we might constrain that discretion. See, e.g., *Scott v. State*, 306 Ga. 507, 509 (2019) (citing constitutional and statutory limits on punishment following guilty verdicts or pleas to multiple criminal charges). So we vacate Owens's sentence for child cruelty and leave it to the trial court to determine the proper outcome pending resolution of the felony murder counts. Any alleged errors with any counts on which Owens is sentenced

33

may be raised in a subsequent appeal.[10] See *Welbon v. State*, 304 Ga. 729, 730 n.2 (2018) ("A criminal defendant in a second, post-remand appeal may raise issues relating to a new trial court order on remand, or may raise issues — such as the ineffective assistance claim in this case — that were raised but not decided in the first appeal." (cleaned up)).

In sum, Owens's conviction for felony murder premised on aggravated assault is reversed. The guilty verdict for felony murder based on child cruelty is no longer vacated as a matter of law and stands reversed. Owens may be retried on both felony murder counts. With the reversal of the felony murder conviction, the guilty verdict for the underlying aggravated assault unmerges, and the trial court must determine whether to impose a sentence on that count, depending on further proceedings. The child cruelty sentence

---

[10] With respect to this appeal, Owens's remaining enumerations are thus moot or unlikely to re-occur. See *Wilson v. State*, 322 Ga. 76, 77 n.1 (2025) (following reversal of conviction on one enumeration, Court will not address remaining enumerations that are moot or concern issues unlikely to re-occur upon retrial). And to the extent Owens raises claims regarding her aggravated assault verdict, she was not sentenced on that count, and those claims are currently moot. See *Welch v. State*, 306 Ga. 470, 473 n.5 (2019).

is vacated and the trial court may enter a sentence (or not) following further proceedings. And if convictions are later entered on the aggravated assault and child cruelty verdicts, we leave it to the trial court to consider in the first instance any challenges to convictions entered on those counts, which could be raised in a subsequent appeal.[11]

Admittedly, this case is a bit of a mess. And that's largely our

---

[11] Contrary to the dissent's suggestion, there is authority supporting this result. In *Brundage*, for example, we resolved an appeal similarly. There, the defendant was convicted of felony murder (based on firearm possession by a convicted felon) and possession of a firearm during the commission of a felony. *Brundage*, 320 Ga. at 721. We reversed both convictions based on ineffective assistance of counsel, which caused the defendant's felon-in-possession conviction to unmerge. Id. But sufficient evidence supported the reversed convictions, so we remanded for retrial. Id. And we left any challenges to the felon-in-possession count for a later appeal, if a conviction was entered on that count. Id. Similarly, we affirmed a conviction for concealing the death of another, which the defendant did not challenge on appeal. Id. And we "remand[ed] for the trial court to enter a sentence on the felon-in-possession count, as necessary depending on the disposition of the felony murder count … on any retrial. And we leave any challenges to any conviction entered on the felon-in-possession count for any future motion for new trial or appeal[.]" Id. at 732. There is nothing improper about recognizing the contingencies on remand or saving certain issues for a subsequent appeal, if any.

And *Stansfield*, one of the plain-error-jury-instruction cases cited above, *supra* n.9, is a good example of a court reversing one of the defendant's convictions, affirming the rest, and vacating the defendant's sentences to be resolved consistent with proceedings on remand. 101 F3d at 922. We see nothing objectionable with that approach here.

fault because of *Owens I*. So we do not lightly reverse Owens's felony murder conviction for a second time. Still, we have no trouble concluding the trial court plainly erred when it answered the jury question. But the harm from that error extended only to Owens's felony murder conviction, so Owens isn't entitled to a full retrial. Nor is there any need to answer merits, sentencing, or merger questions regarding Owens's child cruelty conviction that may never be asked. Last time, we used a sledgehammer and did so incorrectly. We now attempt a more precise approach.

*Judgment reversed in part and vacated in part, and case remanded. All the Justices concur, except Warren, P.J., and McMillian and Colvin, JJ., who dissent in part.*

MCMILLIAN, Justice, concurring in part and dissenting in part.

I concur fully in nearly all of the majority opinion. I agree that under plain error review, Owens did not affirmatively waive her objection to the trial court's erroneous answer to the jury's question, that the trial court's answer constitutes clear or obvious error, that the error affected Owens's substantial rights because it "affected the outcome of the trial court proceedings," and that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *State v. Kelly*, 290 Ga. 29, 33 (2011). Where I depart from the majority opinion is its analysis of how the error affected the outcome of the trial court proceedings and what that means for any retrial.

As concluded by the majority opinion: "Given the centrality of the mens rea issue at trial, the jury's apparent confusion about, the trial court's improperly ruling out a valid verdict, and the strong evidence that Owens caused Jaylen's death, there is a reasonable probability that—but for the trial court's error—the jury would have found Owens guilty of involuntary manslaughter rather than felony

37

murder." That is all that is required to meet that prong of the plain error analysis – a determination that the *outcome* of the *proceedings* would have been different. But then the majority opinion goes on to analyze whether the verdict of the child cruelty count would have been different without the instructional error. I have not found any case, and the majority opinion cites none, where we have applied the plain-error standard to require a count-by-count analysis of whether the result on that count would have been different. Instead, as explained in *Kelly*, the seminal case from our Court adopting the federal plain error standard to unobjected-to jury instruction errors, the question is whether "the error must have affected the appellant's substantial rights, which in the ordinary case means [she] must demonstrate that it affected the outcome of the trial court proceedings." *Kelly*, 290 Ga. at 33.

This is consistent with the purpose of the plain error rule – permitting appellate review of "plain error which affects substantial rights of the parties" even though the error "was not brought to the court's attention" at trial, which would have given the trial court an

opportunity to correct it at that time. OCGA § 17-8-58(b) (providing for plain error review for unobjected-to jury instruction error). See also *Puckett v. United States*, 556 US 129, 135 (2009) (explaining that plain error review is a "limited exception" to the contemporaneous objection rule). In other words, an appellate court should only overlook the failure to timely object at trial *if* the court determines that there is a serious question about the outcome of the proceeding due to the error. As we have often said, "[a]n appellant must establish all four elements of the test in order to demonstrate plain error, so satisfying this test is difficult, as it should be." *Clark v. State*, 315 Ga. 423, 440 (2023).

Here, the majority opinion has determined that Owens has met this high standard, so the next question is what should be the remedy. A review of those cases in which this Court has reversed criminal convictions based on plain error in instructing the jury shows that this Court has not grappled with this issue but has instead reversed on all counts, likely because in those cases it was relatively clear that the instructional error affected multiple counts.

See, e.g., *Pindling v. State*, 311 Ga. 232, 237 (2021) (plain error in failing to instruct the jury on accomplice corroboration); *Doyle v. State*, 307 Ga. 609, 615 (2020) (same); *Stanbury v. State*, 299 Ga. 125, 131 (2016) (same); *Cheddersingh v. State*, 290 Ga. 680, 686 (2012) (plain error when preprinted verdict form required any finding of not guilty on each count be made beyond a reasonable doubt).[12]

---

[12] Although the majority opinion correctly notes that appellate courts commonly partially reverse convictions, none of the cited cases involved the proposed remedy here, i.e., holding onto a verdict from the first trial until after a retrial. See *United States v. Irons*, 31 F4th 702 (9th Cir. 2022) (affirming convictions for conspiracy to distribute fentanyl and possession of fentanyl with intent to distribute but reversing conviction for possession of a firearm in furtherance of drug trafficking where district court erroneously instructed the jury that it need only find that defendant possessed the gun in "connection" with rather than "in furtherance of" drug trafficking); *United States v. Piette*, 45 F4th 1142 (10th Cir. 2022) (reversing kidnapping conviction where district court plainly erred by misallocating burden of proof on defendant's statute of limitation defense but affirming his conviction for traveling with intent to engage in sexual relations with a juvenile because that charge fell within the applicable statute of limitation); *United States v. Simpson*, 845 F3d 1039 (10th Cir. 2017) (where district court erred in charging the jury as to "constructive possession," affirming conviction for possession with intent to distribute cocaine (as the jury necessarily found intent) and convictions for firearm possessions where the evidence was uncontroverted that defendant held a loaded shotgun before trying to sell it but reversing remaining convictions for unlawful possession of handguns and ammunition where the evidence showed that the handguns and ammunition were found in locations jointly occupied by defendant and his wife and that visitors had access to); *United States v.*

In this case, it is clear that the trial court's instructional error involved the aggravated assault, child cruelty, and involuntary manslaughter charges because the jury posed a question about these charges and the trial court's answer referred to these charges. Yet the majority opinion has reasoned that because the jury likely would have found Owens guilty anyway of child cruelty and aggravated assault without the instructional error, those verdicts stand. In contrast, even though the instructional error did not directly involve the felony murder counts, the majority has determined that there is a reasonable likelihood that the jury would have found Owens guilty of involuntary manslaughter rather than felony murder.

There is a tension in those conclusions. Because the aggravated assault and child cruelty counts were the predicate offenses for the two felony murder counts and the involuntary manslaughter options were lesser offenses to the felony murder counts, the evidence for all

---

*Stansfield*, 101 F3d 909 (3d Cir. 1996) (affirming all convictions related to mail fraud and money laundering but reversing conviction for witness tampering where the district court omitted an essential element of that offense in charging the jury).

of those offenses was necessarily intertwined, so it is difficult for me to see how an appellate court can determine that the jury would have convicted on certain charges but not others, but for the instructional error.

Moreover, it is troublesome that the majority opinion only reaches these conclusions by parsing the phrasing of the jury's question and trying to determine what the jury was thinking. That analysis assumes that the jury was thinking as lawyers do when asking the question and receiving the trial court's answer. However, courts have long recognized that a jury may render seemingly irrational, inconsistent verdicts "through mistake, compromise, or lenity." *United States v. Powell*, 469 US 57, 64 (1984). We do not know whether the jury's question was raised by one, two, or all of the jurors, nor can we know what any one of the jurors was considering on the involuntary manslaughter, child cruelty, or aggravated assault counts and whether the erroneous instruction affected that consideration.

Because of the intertwined nature of these counts and the

conclusion that plain error affected the outcome of the trial, I believe that a reversal is required on all of the counts, which is consistent with how this Court has dealt with reversals even though the error related to mutually exclusive verdicts did not affect all of the counts. See *State v. Owens*, 296 Ga. 205, 212 (2014) (*Owens I*) (reversing and remanding on all counts, including child cruelty and aggravated assault, even though only the verdicts on felony murder and felony involuntary manslaughter were set aside); *Flores v. State*, 277 Ga. 780, 785 n.4 (2004) (because verdicts of guilty for felony murder and involuntary manslaughter were mutually exclusive, new trial granted on all counts related to the specific victim); *Jackson v. State*, 276 Ga. 408, 413 (2003) (judgment reversed and new trial required on all counts because felony murder and involuntary manslaughter convictions were mutually exclusive).

Finally, I would like to note some other considerations that counsel for reversal on all counts. It is not clear to me under what authority this Court can "leave undisturbed" certain verdicts from one trial but vacate the sentence on that count and then order that

43

the trial court enter judgment and sentences following a second trial on other counts.[13] I am not persuaded by the majority opinion's reliance on *Brundage v. State*, 320 Ga. 721 (2025) (reversing convictions for felony murder and possession of a firearm during the commission of a felony based on ineffective assistance of counsel for failing to object to the prosecutor's incorrect explanation of self-defense and concluding that the count of possession of a firearm by a convicted felon unmerged following the reversal of the felony murder conviction). First, in permitting the felon-in-possession conviction to stand, we specifically concluded that "the evidence that Brundage possessed a gun after the time of necessity is uncontradicted by any other evidence." Id. at 728. We cannot conclude the same in this case. Moreover, we cited no authority for remanding for the trial court to enter a sentence on the unmerged count, as necessary, depending on the disposition of the felony

---

[13] Similarly, the majority opinion suggests that after the retrial, the trial court can determine merger issues for the child cruelty and aggravated assault counts that went to verdict in the previous trial. However, it is not clear to me how a trial court should resolve potential merger issues if the evidence presented is different between the trials.

murder count on any retrial. See id. at 732.

And, even under the majority opinion's holding, if the State elects to retry on felony murder and involuntary manslaughter, the State will still have to present evidence on the child cruelty and aggravated assault counts in order to meet its burden on the felony murder counts, so it seems that the majority's procedure is unduly cumbersome while not promoting any efficiency in the presentation of the evidence. To the extent that this Court has any discretion in how to order a retrial, this factor counsels in favor of a reversal on all counts.

For these reasons, I would reverse the counts affected by the jury's question – child cruelty,  aggravated assault, and involuntary manslaughter – as well as the two counts of felony murder, one predicated on child cruelty and the other on aggravated assault, so that on remand the State can elect whether to retry some or all of these charges. I respectfully dissent from those portions of the majority opinion that hold otherwise but otherwise concur fully in the majority opinion.

I am authorized to state that Presiding Justice Warren and Justice Colvin join in this opinion.